Crosby *v.* Brownson.

In the Court below,

ALFRED BROWNSON, and HANNAH his wife, DANIEL ACK-
LEY, SARAH ACKLEY, MERCY ACKLEY, RUTH ACKLEY,
CATHARINE ACKLEY, JESSE DISBROW, and RHODA his
wife, *Petitioners ;* DAVID CROSBY, *Respondent.*

THIS was a petition in chancery for relief, under the fol-
lowing circumstances :

On the 19th of July, 1766, *David Ackley* gave a bond to
*Malcolm Morrison* conditioned for the payment of 400*l.* on
or before the 19th of July then next, and secured the same
by mortgage. Before the bond became due, *Morrison* as-
signed it, for a valuable consideration, to *Beverly Robinson*,
of which, *Ackley* had notice. *Ackley* remained in possession
of the mortgaged premises until the 4th of November,
1797 ; when he conveyed, by deed of bargain and sale, with
covenants of warranty, a part thereof to *Alfred Brownson*,
one of the petitioners ; and remained in possession of the
residue, until his death, on the 4th of January, 1804. *Brown-
son's* deed from *Ackley* was immediately put upon record.

On the 1st of December, 1783, *Robinson* went to England,
and there lived, until his death, about the 1st of January,
1797, without leaving any heirs, or legal representatives, in
the United States.

On the 27th of October, 1797, after the decease of *Morri-
son*, *James Scofield*, knowing the facts above stated, purcha-
sed, for a very small consideration, a promissory note given
by *Morrison*, in his life-time, to one *Birdsall ;* and thereupon,
as principal creditor to *Morrison*, took out letters of ad-
ministration on his estate ; and procured appraisers to be

G g g

*The benefi-
cial interest
of the mort-
gagee in
mortgaged
premises
passes, by
assignment
of the mort-
gage debt, to
the assignee ;
and nothing
remains in
the mortga-
gee which
can be assets
in the hands
of his admi-
nistrator.*

1807.

Crosby
v.
Brownson

appointed, and an inventory and appraisal to be made and returned, which included the mortgaged premises as the only estate of the deceased. The administrator then represented the estate insolvent, and had commissioners appointed, who allowed a claim in his favour, of 229*l.* 12*s.* 9*d.* for the payment of which, with other charges, the mortgaged premises were, by order of the Court of Probate, sold to *David Crosby,* the respondent, for $ 450,the administrator giving a deed of the same, subject to the incumbrances of dower, and of *Ackley's* equity of redemption.

On the 6th of October, 1801, *Crosby* brought an action of ejectment against *Brownson,* for that part of the mortgaged premises which had been conveyed by *Ackley* to *Brownson,* and during the pendency of this petition, recovered judgment. It was averred, that he had right to sue for and recover the residue.

*Ruth Ackley,* one of the petitioners, was the widow of *David Ackley,* being entitled to dower in such part of the mortgaged premises as was not conveyed to *Brownson,* and the rest of the petitioners, except *Brownson,* were the heirs at law of *David Ackley.* The petition was dated the 20th of December, 1804.

By order of the Superior Court, this case was continued from August term, 1805, to January term, 1806, and notice of the pendency thereof was given, in the vacation, by advertisement, to the heirs of *Robinson ;* who made default of appearance.

The foregoing facts were stated in the petition, and found by the court to be as stated. There was, also, in the petition, an allegation, that after the assignment of the bond by *Morrison* to *Robinson,* and before the 1st of January, 1774, *Ackley* paid to *Robinson* all that was due thereon ; which the court excepted from their finding, but found, that after the decease of *Robinson,* his heirs appointed an agent in the city

of New-York to collect debts due to the deceased; that they transmitted to this agent the bond and mortgage aforesaid; and that some time in the year 1805, *he* delivered the same to *Crosby*, declaring, that he did not consider that there was any demand in favour of the estate of the deceased thereon against the estate of *Ackley*. An injunction was thereupon decreed against *Crosby's* making any use of his judgment against *Brownson*, or of his deed from *Scofield*.

*Ruggles* for the plaintiff in error.

On what ground could *Ackley*, or can those claiming under him, sustain this petition? What are their rights? They are mortgagors in possession after the day of payment is past, and the estate is forfeited at law. They have lost the legal title, and have no equitable right to the land, till they pay the mortgage money, which now remains due.

What are *Crosby's* rights? He has the legal title, and claims the equitable title, as being a purchaser for a valuable consideration, without notice of any claim on the estate, but that of the petitioners' right of redemption.

Why, then, should *Crosby* be prohibited from availing himself of his title against the petitioners? A defendant in possession without a legal title, can never protect himself in ejectment, by setting up the equity of a third person, not a party to the suit; and a bill for an injunction against the plaintiff in ejectment, who has a legal title, cannot be supported, by setting up the equitable right of any person, except that of the defendant himself. Such a bill would involve questions between the plaintiff at law and such third persons, which could never be decided with propriety; and if decided, would not be binding.

If the defendant in ejectment has a debt to pay in order to entitle him to retain possession, and is doubtful whether it ought to be paid to the plaintiff, or to some other person, he

may exhibit his bill of interpleader, and, in that way, compel the parties to establish their rights before a proper tribunal ; and then he may pay the money with safety : but he is not entitled to an injunction, before he has performed his duty, by paying the debt, or bringing the money into court. In this case, any equitable rights, which *Robinson* may have, can be of no avail to the petitioners ; and they can, in no manner, be brought in question, unless the petition be considered as a bill of interpleader, as well as a bill for an injunction.    If the petition be considered as a bill of interpleader, and *Robinson's* heirs were made parties, by order of the Superior Court, on that ground ; they ought to and probably would have supported their claim (if any claim they had) to the debt due from the petitioners : but they gave up the original bond and mortgage to *Crosby*, and never appeared before the court to contest his right to the money.    And as he had the bond in his possession, at the time of the trial, the petitioners might have paid the money due on it, to him, with perfect safety.

It may be said, that as the bond was assigned by *Morrison* to *Robinson*, the mortgage must be considered in equity as transferred with it, and could not be assets in the hands of *Morrison's* administrator.    But *Crosby* confessedly has the legal title, by purchase from the administrator ; and if the land was not *assets*, it is difficult to conceive how he obtained a legal title to it.    Besides, he was a purchaser under the administrator, *bona fide*, and for a valuable consideration, without notice of the assignment of the bond ; and there was no assignment of the mortgage, but the title appeared upon record to be in *Morrison* at the time of his death.    *Crosby* then, has the same rights as though he had purchased of *Morrison* while living ; and when a man having the record title in Connecticut, or the title deeds in England, makes a sale of land to a person not knowing of a prior incumbrance, the prior incumbrancer is always postponed. And it can make no difference, if the sale be made by the administrator of a man, who, from the record, appears to

have died seised. *Crosby*, therefore, has equal equity with the heirs of *Robinson*, and has the legal title, and ought to prevail against them, if he was now litigating with them directly. And surely, when they have abandoned their claims, in the manner they have done, the petitioners, who have no right at law, or in equity, until they have paid the debt, cannot avail themselves of any rights, which the heirs of *Robinson* may have had, to protect themselves in their possession.

Further, if the bond is ever collected, it must be done in the name of *Morrison's* administrator. And whether it be collected, by taking possession of the land, by sale, or by suit on the bond, is immaterial. It is also immaterial to the petitioners, whether the money be finally paid over to *Crosby*, or to the heirs of *Robinson*. The bond is in *Crosby's* hands, and when they have paid it, they ought to be quieted in the possession of the mortgaged premises, but not before.

*Daggett*, and *R. M. Sherman*, for the defendants in error.

Were we to view a mortgage in fee, after forfeiture, in a legal light only, and infer its nature from the form of the deed, we should ascribe to it all the incidents of a common fee simple estate. But it assumes a very different aspect in the eye of equity, " because the mortgagee, *notwithstanding* " *the form*, has but a chattel, the mortgage being only a " pledge to him for security of his money, and the original " *ownership* of the land *still residing* in the mortgagor, sub- " ject only to the legal title of the mortgage *so far* as such " title is *requisite* to the *end* of his security." (*a*) By the facts found, it appears, that *Morrison* assigned all his interest in the bond of *Robinson* ; therefore, *his* representations cannot need this land, which is the security, while they have not the bond ; to secure which the mortgage was *solely* intended, and for which *only* it can be employed. The defen-

(*a*) *Pow. Mort.* 221, *4th edit.*

dants in error still own the land, subject to no claim, but that of the owners of the bond. They are not, as is contended, " setting up the equity of a third person, not a party to the suit," but their own. They are not strangers in interest, but have rights paramount to all, theirs excepted who own the debt. " It is an affront to common sense" says Lord MANSFIELD, (*b*) " to say the mortgagor is not the *real owner*."

By assignment of the bond, the security, as an *incident*, has, *in equity* passed to the assignee, and is now vested in the representatives of *Robinson*. (*c*) The purchaser under *Morrison's* administrator can have no claim to it, on the ground, that the legal title was in *Morrison* at his death ; for no estate of inheritance, in which the deceased had not a *beneficial* interest, could be assets in the hands of his administrator. The land in question, by the general law, descended to *Morrison's heirs ;* and in *their* name, not, as has been contended, in the name of his *administrator*, must the legal title be enforced in favor of the real owner of the bond. The claim of the plaintiff in error, therefore, is as destitute of *legal form*, as it is of *substance*.

But it is said, *Crosby* was a puschaser *for a valuable consideration, without notice*. He had notice, by the record, that this was a mortgage title only ; and must have known, that the administrator was not in possession, either of the land, or bond. Under these circumstances, want of notice will not protect a purchaser. (*d*) He must, also, be presumed to know, that to buy the land without the bond, was to buy nothing. Further, *Scofield*, of whom he bought, is expressly charged with notice of all the facts, and this concludes *Crosby*. (*e*) But, it does not appear from the record, *but that*

(*b*) *Doug*. 631, *King* v. *St. Michaels*.
(*c*) 1 *Root* 248.
(*d*) 1 *Vern*. 246, *Trevanian* v. *Mosse*.
(*e*) *Pow. Mort*. 601.

*Crosby* had the same notice ; and it is not sufficient for him, that he is not charged with notice in the bill. Our title does not depend on the existence of notice, but his on the want of it : and to avail himself of that, he must have set it up, by express averment, as a substantive *ground of defence* to the bill. (*f*)

1807.

CROSBY
*v*
BROWNSON.

BY THE COURT, unanimously,

The judgment was affirmed.

(*f*) 3 *P. Wms.* 244, in note.

## Whittelsey *v.* Wolcott.

### In the Court below,

CHAUNCEY WHITTELSEY, *Plaintiff ;* ALEXANDER WOL-
COTT, *Defendant.*

THIS was an action of *indebitatus assumpsit* for money had and received.

The declaration stated, that the plaintiff, as collector of the customs for the district of Middletown, received certain bonds specified, which were taken for duties on imports, and which, while unpaid, the plaintiff, when going out of office, delivered to the defendant, who came into the same office ; that these bonds have since been paid to the defendant ; and that one moiety of the commissions on the money so paid was received by the defendant to the plaintiff's use ; and in consideration thereof, the defendant assumed, &c.

The defendant pleaded in bar, that the President of the United States removed the plaintiff from the office of col-

That a special plea amounts to the general issue is not a ground of demurrer ; though the court may disallow such plea, and cause the general issue to be entered.

In case of the *removal* of a collector, he is not entitled to a moiety of the commissions received by his successor on the collection of duties bonded by himself while in office.