PEOPLE ex rel. CARVALHO et al. v. WARDEN OF CITY PRISON.

(Supreme Court, Special Term, New York County.    April, 1909.)

1. CORPORATIONS (§ 336*)—OFFICERS—LIABILITIES—PARTICIPATION IN WRONGFUL ACT.

The officers of a newspaper corporation, who are not shown to have been actively engaged in the management of the paper, cannot be prosecuted for criminal libel, unless a criminal intent on their part is shown.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 336.*]

2. HABEAS CORPUS (§ 30*)—LIBEL—CRIMINAL INTENT.

Where officers of a newspaper corporation are not shown to have actually participated in its affairs, they will be discharged on habeas corpus when arrested for criminal libel.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 30.*]

Application by the People, on the relation of Carvalho and others, for a writ of habeas corpus against the Warden of the City Prison. Motion to discharge relators granted.

Clarence J. Shearn, for the motion.
William Travers Jerome, Dist. Atty., opposed.

GERARD, J. This proceeding comes before me on a return to a writ of habeas corpus. The relators are the president, treasurer, and secretary of the Star Company. It is conceded that the Star Company publishes a newspaper called the "New York American." It is conceded that on December 17, 1908, there was published in this newspaper an article referring to John D. Rockefeller, Jr. This article, in substance, states: That Rockefeller, Jr., originated peonage in a stockade; that he kept workmen behind a high fence guarded by armed sentries; that employés in the stockade are forced to run into debt to their employers and are practically kept prisoners; that he ordered bunkhouses built; that the workmen be fed in the stockade; that they be not let out oftener than necessary; that charged electric wires were put along the top of the stockade; that men were beaten and prodded by the guards, who shot at them when they tried to escape.

Irrespective of the question as to what "peonage" means, as how or under what statutes it is punishable, the charges made in the article against Rockefeller on their face hold him up to scorn, con-

tempt, and ridicule. The article is libelous per se, and is undoubtedly a gross and vicious libel. The writers and publishers of it should be brought to trial. There is no evidence here, however, that these relators have had anything whatever to do with the writing or publication of this libel or with the editing, publishing, sale, or circulation of the newspaper containing it. The question is: Are the officers of a corporation which publishes a newspaper liable to criminal prosecution for libels printed in the newspaper, simply because of the fact that they are such officers and without any further proof to connect them with the management of the newspaper?

In examining this question there are certain fundamental principles of our system of law not to be lost sight of. In the first place, it is a cardinal principle of law and of natural justice that no crime can be prosecuted unless the person committing the act had a criminal intent. St. Augustine, in his De Civitate Dei, says that there cannot be any crime where there is no intent; and to this question of criminal intent there has been added the qualification that the doing of an act may itself furnish evidence of the criminal intent sufficient to lead to the punishment of the doer of the act. An example of this would be the case of a milk dealer who buys milk, not knowing that it is below the quality required by law, even honestly believing it of required quality, and then sells it. He is punished for the sale; the act of sale of milk below standard constituting both the crime and the criminal intent, although, as a matter of fact, the milk dealer honestly believed that he was not violating the law. But I cannot conceive of the punishment of a man for the commission of an act in which he did not participate or concerning which he had no criminal intent. It must be remembered also that, under the Anglo-Saxon system of law, the state must prove that a man is guilty. The state cannot make wholesale prosecutions for a crime committed, and then compel those arrested to prove their innocence. What would be said of a law which provided for the arrest and trial of every person in an assembly district in which a crime had been committed, but permitted them to prove their innocence on the trial? It may be that we have received such an infusion of foreign blood in this city that the proposition may not shock; but, however effective as a means of discovering crime, it is utterly repugnant to every idea of an Anglo-Saxon jurisprudence.

Now, the section of the Penal Code [section 246] of our state under which it is sought to hold the relators is as follows:

"Every editor, or proprietor of a book, newspaper, or serial, and every manager of a partnership or incorporated association by which a book, newspaper or serial is issued, is chargeable with the publication of any matter contained in such book, newspaper or serial. But in every prosecution for libel the defendant may show, in his defense, that the matter complained of was published without his knowledge or fault and against his wishes, by another who had no authority from him to make the publication, and whose act was disavowed by him so soon as known."

The district attorney claims, because the relators are officers of this corporation, they are prima facie its managers, and on mere proof of the fact that they are officers they are put to prove their innocence at a trial. Now, I do not think the meaning of this section is

involved. The section means exactly what it says in plain English. On proof that a man is manager of an incorporated association which has published a libel, he is put to his trial. Does the word "manager" mean something other than a man engaged in the actual management of the affairs of a corporation? An officer of a corporation may be its manager, or one of its managers, and a man may manage the affairs of a corporation and yet not be an officer. I cannot see that the words are interchangeable. I think that, when a corporation publishes a newspaper which has published a libel, every person who at the time of the publication is in any way engaged in the actual management of the corporation is subject to prosecution under the section referred to; but some proof of actual management must be made to hold any person for trial. What an absurd situation is otherwise presented! An officer of a corporation which publishes a newspaper which prints a libel at the time of this printing, and for months before and for months after may be lying at death's door, unconscious of night and day, and yet, on mere proof that he is an officer of the corporation, he is arrested, dragged to trial, and compelled not to meet proof of his participation in the criminal act, but compelled to prove his innocence. That may be law for the star chamber, law for the Czar of Russia; but, in my opinion, it is not the law of the state of New York. The law says that the actual proprietor of a newspaper is subject to prosecution, and then, of course, on proof of such proprietorship being made, a case is made out which puts the proprietor to his excuse; but that is not the case here. The law does not put "officers" of an incorporated association to their defense on that proof alone, but very justly compels those actually engaged in the management, whether officers or not, if engaged in such management at the time the libel is printed, to stand trial.

Long after the section of the Penal Code referred to became law, the Legislature, in 1907, passed an act which compels each newspaper published by a corporation to print the names of the president, secretary, and treasurer, and the learned district attorney claims that this law permits the inference to be reasonably drawn that such officers are considered responsible for the policy of the corporation publishing the newspaper. In the first place, this subsequent law can hardly be held to make persons not previously liable to prosecution under the Penal Code subject to its provisions, and, second, this law was plainly enacted for the purpose of showing upon whom service of civil process could be made. Crimes punished under our laws are stated in the Penal Code, and it would be a most novel construction to hold that the passage of a law compelling newspapers published by corporations to print the names of the officers of such corporations was intended by the Legislature to render persons not referred to in the Penal Code section amenable to its provisions. The learned district attorney, in his erudite and skillful brief, cites the provisions of the corporation law, which provides that "the affairs of every corporation shall be managed by its board of directors," forgetting, however, that officers of a corporation are not necessarily directors, and in any event, even should the corporation law provide

that the officers of a corporation should be called its managers, this would not make an officer of a corporation a "manager" within the meaning of a criminal statute which provided for the prosecution of those actually managing its affairs. Some proof of actual acts of management would still be required for the purpose of this criminal prosecution, irrespective of how officers of a corporation might be defined in any statute relating to business corporations or legal dictionary.

There was no evidence before the magistrate showing that any of the relators were concerned in the actual management of the corporation at the time the libel was printed, and the writ must be sustained, and the relators discharged.