THE STATE OF CONNECTICUT *vs.* JOHN E. PARKER.
THE STATE OF CONNECTICUT *vs.* CLARENCE V. SMITH.
THE STATE OF CONNECTICUT *vs.* PAUL M. SMITH.

Third Judicial District, New Haven, June Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued June 5th—decided July 31st, 1930.

*Benjamin Slade* and *Charles J. Martin,* with whom was *Louis Weinstein,* for the appellants (the accused).

*Samuel E. Hoyt,* State's Attorney, with whom was *Abraham S. Ullman,* Assistant State's Attorney, and, on the brief, *Arthur F. Brown,* for the appellee (the State).

44

Hinman, J. The assignments of error are numerous but most of them depend upon and are determined by a few general propositions. The first of these is the applicability, to the charges, of the statutes upon which the prosecution is based. The first twenty-six counts of the information were founded upon and brought under § 6364 of the General Statutes, which reads as follows: "Any officer or agent of any public, municipal or private corporation, any executor, administrator, guardian, conservator and any trustee under a testamentary or express trust, who shall wrongfully appropriate and convert to his own use the money, funds or property of such corporation, estate, ward, trust or other person, shall be fined not more than ten thousand dollars or imprisoned not more than ten years or both."

The portion of this statute involved in the present case is that which applies to a "trustee under [an] express trust, who shall wrongfully appropriate . . . to his own use the money, funds or property of such . . . trust." In the present instance it is alleged in the information, the proof is to the effect, and the defendants concede, that the trustee of each of the trusts involved in the several counts was the corporation—The Parker-Smith Company, and not, as distinguished therefrom, the defendants individually, or any of them. The acts charged against the defendants as constituting embezzlement on their part were alleged to have been done by them acting as officers of the corporation, for and on its behalf. It was undisputed that the moneys claimed to have been converted were not actually appropriated to the use of the defendants, or any of them, as individuals, but were deposited in or transferred to the general bank accounts of the corporation and disbursed therefrom for its general purposes.

The contention of the State on the trial, and here,

and the decision of the trial court on this point, as reflected in rulings and enunciated in the charge, were that, notwithstanding the foregoing, "if the officers and directors of a corporation participate in a criminal act as a corporate act, they are individually liable for such acts," and that the fact that such an officer performed the acts in his official capacity affords no justification absolving him from criminal responsibility. The appellants maintain that, under the statute upon which these counts are based, the officers of a corporation trustee are not amenable to prosecution and punishment for acts, as such officers, for and on behalf of the corporation, although such as to constitute embezzlement by the corporation itself, or as would render them liable had they so acted as an individual trustee.

Embezzlement was not a crime at common law. It is a purely statutory offense, and is punishable, as such, only as and to the extent that the legislature has by statute provided. "The unlawful appropriation of money and other chattels, made punishable by these statutes, falls short of the common-law crime of larceny, because there was no felonious taking. The property being in the lawful possession of the party who appropriated it, there was no trespass or breach of the technical possession which is essential in the case of larceny. *State* v. *Hanley,* 70 Conn. 265, 270, 39 Atl. 148. While the act, considered from the moral standpoint, is as bad as theft, it did not fall within the category of crimes at common law. It was a mere breach of trust. The legislature had the power to make such acts crimes and has done so. The acts which are thus made criminal, and the persons to be affected by the enactments, must be determined from the terms of the statute. Statutes of other States and the construction which has been placed upon them can be of little help in construing our statute, unless such stat-

utes are in substantially the same language as ours."
*State* v. *Lanyon*, 83 Conn. 449, 451, 76 Atl. 1095. We
are therefore to determine the question of the applica-
bility of this statute (§ 6364) to the charges against
these defendants. Being a penal statute it must be
strictly construed in that it "cannot be enlarged by
construction to cover a case not within its literal
terms," or "for the purpose of more effectually sup-
pressing the mischief at which it is directed." *State* v.
*Levy*, 103 Conn. 138, 141, 130 Atl. 96. "No act is a
violation of a penal statute, unless it falls within the
fair import of its language. Such statutes are not to
be extended beyond the fair import of their language.
They are always to be strictly construed for the benefit
of the citizen. Nothing more is to be deduced from the
words than they expressly warrant, and they are not to
be extended by implication. In the construction of
such a statute, the question is not what the legislature
actually meant to say, but what is the meaning of
what it did say." *State* v. *Penner*, 85 Conn. 481, 484,
83 Atl. 625, and cases there cited. Thus construed,
§ 6364 is limited in its scope, so far as concerns the
present inquiry, to the trustee of the express trust
(here, the corporation) and does not extend to officers
or agents acting as such, for it and in its behalf. The
information does not charge nor does the proof dis-
close that these defendants were trustees of an express
trust. Had the legislature intended to include the offi-
cers of a corporation trustee it must be presumed that
it would have made the appropriate designation. We
cannot extend, by construction, this statute to persons
who are not included within its terms.

It has been held by courts of other States, including
cases here relied on by the State in support of the ap-
plicability of § 6364, that acts which amounted to a
personal conversion of money or property by the ac-

cused, to his own use, were to be regarded and punished as such, although corporate in form and carried out through the instrumentality of a corporation of which the accused was an executive officer. Such, however, is not this case. The acts here involved were, obviously, not only in form but in substance, acts of or in behalf of the corporation. It also has been held that an officer of a corporation may be held criminally responsible for embezzlement of the property of a third person through a corporate act, where the act was done by the officer or at his direction, or by his permission. See 33 A. L. R. p. 787, note. Examination of the cases develops, however, that this result has been reached under, and permitted by, statutes much more broad in scope than the one under which this prosecution is brought. We advert to some of them, as illustrative. *State* v. *Ross* (1909) 55 Ore. 450, 104 Pac. 596, 106 Pac. 1022, 42 L. R. A. (N.S.) 601, was specially relied upon by the State in argument. This prosecution was based upon a statute (§ 1807) which provided "If any person shall receive any money whatever for this State . . . or shall have in his possession any money whatever belonging to such State . . . and shall in any way convert to his own use any portion thereof . . . such person shall be deemed guilty of larceny." Ross was president of a trust company with which the State of Oregon deposited money, and which went into a receivership with cash on hand far short of the balance due on the State account. It was held that the State money was a special deposit, a conversion of which took place when it was paid to another than the State treasurer, and that if it was a violation of the statute for the trust company to convert the money, it was equally so for anyone who did the act for it, or authorized it.

*Milbrath* v. *State* (1909) 138 Wis. 354, 120 N. W.

252, a prosecution for embezzlement, resembled, in some aspects, the facts adduced under some of the counts in the present case. The defendant and others, partners, acting as agent for one Mizer, loaned $300 of his money on a note and mortgage, which was assigned later to Mizer, but the assignment was unrecorded. The partnership business and assets were turned over to a corporation formed by the defendant and others. In 1903 the mortgage was paid off in the presence of the defendant, who was president of the corporation, the mortgagor was given a satisfaction executed by the defendant, and the money was credited on the books to the Mizer estate, but mingled with other funds of the corporation. The corporation was then insolvent, to defendant's knowledge. Interest was regularly paid on the mortgage until 1905, when the corporation went into bankruptcy. Conviction was affirmed. However, the Wisconsin statute (§ 4418, Statutes, Rev. 1898) included any officer, agent or employee of a corporation who, by virtue of such office or employment, shall be entrusted with the disbursement of any money, and shall embezzle or fraudulently convert it to his own use or to the use of any other person except the owner.

The facts in *State* v. *Thomas* (1923) 123 Wash. 299, 212 Pac. 253, 33 A. L. R. 781, were also quite similar in many respects. A conviction was affirmed in the case of the president and general manager of a corporation engaged in lending money and selling securities, who participated in a transaction by which money due on a security which had been sold to a client was placed to the credit of the corporation's bank account, when paid in by the borrower, at a time when the corporation was in financial difficulties. The applicable statute was § 2601(3) covering every person who having any property in his possession, custody or control as bailee, agent, employee, trustee or officer of any

corporation shall appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto.

In *People* v. *Sherman* (1892) 133 N. Y. 349, 31 N. E. 107, the defendant, manager and director of several grain elevating companies, was convicted of grand larceny in transferring grain held by one elevator as bailee, to another elevator and misappropriating it from the latter. As to a claim that the defendant could not properly be convicted because the grain was in the custody and control of the elevator corporations and not in that of the defendant it is said (p. 354): "The section itself [Penal Code, § 528(2)] obviates the difficulty. It assumes that beneath the technical legal control of the corporation as such lies an actual and effective custody and control of corporate officers and servants. They are specifically described, and the fact in this case corresponds with the description." The offense charged and proved was held (p. 355) to be within the terms of the statute.

*State* v. *Carmean* (1903) 126 Iowa, 291, 102 N. W. 97, involved a conviction for embezzlement, the defendant being the president and treasurer of a buggy company which took notes for vehicles sold, and transferred them to others. Money paid in to be applied on notes was not so applied but retained by the company. It was based on a statute (§ 4842, quoted on page 294) covering embezzlement by "any officer, agent, clerk or servant of any corporation." *Commonwealth* v. *Tuckerman*, 76 Mass. (10 Gray) 173, 187, was brought under a statute resembling in terms our § 6365.

Other cases cited, or discovered in the course of an exhaustive investigation, are not only not analogous in nature but are, for the most part, founded on statutes, general and comprehensive in scope as to the par-

ties amenable, whereby it is made criminal to conduct a business in a particular manner or where the result is to create a nuisance, or the like. Brief illustrative references will suffice. *People* v. *Detroit White Lead Works,* 82 Mich. 471, 479, 46 N. W. 735, was under an ordinance (quoted page 475) providing that "no owner or occupant . . . shall allow any nuisance to exist or remain on his or her premises; . . . nor shall any person, persons, or corporation . . . create . . . any nuisance." *Crall & Ostrander* v. *Commonwealth,* 103 Va. 855, 49 S. E. 638 (agents of corporation peddling without license, general manager convicted). *Overland Cotton Mill Co.* v. *People,* 32 Colo. 263, 75 Pac. 924 (assistant superintendent of mill convicted of employing child under fourteen years of age). *State* v. *Great Works Milling & Mfg. Co.,* 20 Me. 41 (nuisance in building and maintaining dam). *United States* v. *Winslow,* 195 Fed. 587, 581 (Sherman Anti-Trust Act); *People* v. *Clark,* 14 N. Y. Supp. 642, 647 (car heating statute). *State* v. *Botchford,* 71 Wash. 114, 127 Pac. 937 (polluting stream).

We conclude that a due regard to the terms of § 6364 of our statutes and the observance of the rule of construction which is incumbent upon us, require us to hold that the applicable provision of this section does not support a prosecution of officers of a corporation trustee for misappropriation acting as such officers for and in behalf of the corporation. Therefore such portions of the charge as express, and such rulings as were founded upon, a contrary view were erroneous.

The remaining counts of the information (27th to 35th) were founded upon § 6365 of the General Statutes, which is as follows: "Any auctioneer, commission merchant, factor or broker or any agent or attorney of any private corporation, voluntary association, business house or private individual, who shall

take, purloin, secrete, or in any way appropriate to his own use or to the use of others, any of the goods, money, choses in action or property in his care or custody as such auctioneer, commission merchant, factor, broker, agent or attorney, or any moneys received by him for the sale of such goods, choses in action or property, or collected by him as such auctioneer, commission merchant, factor, broker, agent or attorney, with intent to defraud another, or, with like intent, shall make any false entry upon any of their books, or keep false books or entries of and concerning their business and affairs, shall be fined not more than one thousand dollars or imprisoned not more than ten years or both." The scope of that section is sufficient to cover the situation which would be created by proof of the facts alleged in these counts.

The trial court submitted to the jury, as one of the essential questions of fact, whether the agreement or understanding between The Parker-Smith Company and the purchasers and assignees of the several construction loan mortgages involved in these counts was that the company was to use the money paid to it by each such purchaser to pay to the mortgagor the instalments not then due, and therefore unpaid, as they became due. The appellants claim as a matter of law that there was no relation of agency on the part of the company with the assignees of the construction loan mortgages in question, but that the relation of these parties was merely that of debtor and creditor. The effect of the assignment was to transfer to the assignee all of the rights and interests of the assignor. *Crosby* v. *Brownson,* 2 Day, 425; 41 Corpus Juris, p. 680. As between them the assignee thereafter was to be regarded as standing in the shoes of the assignor. *Wiser* v. *Clinton,* 82 Conn. 148, 152, 72 Atl. 928. The assignment being absolute and without recourse, the assignor

was not responsible for the payment of the mortgage debt, as such. 41 Corpus Juris, p. 705. However, neither this nor the fact that the assignee paid to the assignor and the latter accepted the full amount of the principal of the mortgage—including not only the instalments already advanced by the company to the mortgagor, in accordance with the terms of the construction loan, but also the instalments yet unpaid because not due, was conclusive as to the relation between the assignor and the assignee. This remained a matter of intention and agreement between them, and whether this contemplated the making of the further payments as they fell due, by the assignor under and in performance of its original contract with the mortgagor, or as agent for and in behalf of the assignee was a jury question. The reasons of appeal pertaining to this question of agency disclose no harmful error.

To constitute embezzlement, the appropriation of another's property must be with intent to defraud; a fraudulent intent to deprive the owner of his property must be shown. *State* v. *Lanyon*, 83 Conn. 449, 454, 76 Atl. 1095; 1 Brill, Cyclopedia of Criminal Law, p. 924; 9 R. C. L. p. 1296. The felonious or otherwise fraudulent intent is an essential element even though the statute does not in terms so declare. 1 Bishop, Criminal Law (9th Ed.) § 379(2).

The following portion of the charge, as to the first twenty-six counts, is made a reason of appeal: "To take from a segregated deposit the money of a note holder to the possession of which he is immediately entitled, and to place such money in another bank in the name of and to the credit of the corporation, which monies are then used by the corporation without the knowledge or consent of the note holder, to pay its

own debt and the general expenses of conducting its business, is a fraudulent conversion."

As to the remaining counts, this instruction is assigned as erroneous: "If now you find the facts to be as claimed by the State, that The Parker-Smith Company had made certain mortgage loans known as construction loans to certain third parties, which construction loans provided for certain payments to be paid to the mortgagor as the work of construction proceeded, only a portion of which money had been advanced to the mortgagor, and that they sold these construction mortgages to the persons named in the information, such purchasers paying to The Parker-Smith Company the full amount of the mortgage, and such company was to use such money of the purchaser to pay to the mortgagor the instalments as they became due, and that such company upon receipt of the money from the purchasers, instead of segregating the same, placed such monies in their general account and appropriated the same for the general purposes of the corporation, and that the mortgagor received no additional sums from the company, and the purchaser never received back from the company any part of the money which he had thus paid for the mortgage, but all of said money went to the general uses of the company, all of which was done without the knowledge or consent of the purchaser of the mortgage, such facts would constitute the offense of embezzlement by agent and, being so established, you would be justified in finding that under such circumstances such of the accused as you may find knowingly and actively participated in the use and appropriation of such money to the general purposes of the company, would, under the rule that I have already promulgated to you in reference to Counts 1 to 26, be guilty of the offenses thus charged as embezzlement by agent."

These instructions hardly could have been understood otherwise than as holding that proof of dealings with the moneys belonging to note holders and assignees in the manner stated conclusively established a fraudulent intent, and that any other evidential considerations relating to such intent or tending to rebut the presumption arising from the stated acts and use unexplained, were immaterial. In this there was error. There is no prescribed set of circumstances which show a fraudulent conversion; the sufficiency of the proof must be left to the jury to determine. *Fleener* v. *State*, 58 Ark. 98, 23 S. W. 1.

Where alleged fraud is under investigation, considerable latitude is allowed in the admission of evidence and the scope of the inquiry may be broad. *Wilcox* v. *Downing*, 88 Conn. 368, 373, 91 Atl. 262; *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, 37. Evidence affecting the good faith of a defendant is admissible. *Kornblau* v. *McDermant*, 90 Conn. 624, 634, 98 Atl. 587. With certain exceptions (not here applicable) the laws of evidence apply equally to civil and criminal cases. *State* v. *Willis*, 71 Conn. 293, 306, 41 Atl. 820. Where the principal issue is fraud or fraudulent intent a wide latitude is recognized in receiving evidence of facts tending either to inculpate or exculpate the accused. *People* v. *Willson*, 205 Mich. 28, 171 N. W. 474. "Since from its nature intent [to defraud] is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency . . . to establish fraudulent intent on the one hand, or on the other hand to show the bona fides of the accused." 20 Corpus Juris, Embezzlement, § 81, and cases cited; 9 R. C. L. pp. 1294, 1296. "There must be an appropriation by one of the property of another, with a fraudulent or felonious intent to make it his own, and

deprive the owner of dominion over the same . . . Without it there may be misconduct, but there will be no criminality." *Fleener* v. *State, supra,* p. 105. Of course the latitude so to be allowed does not contemplate unbridled liberty in the introduction of evidence. The test of admissibility, as above indicated, is whether the offer tends to establish an intent to fraudulently deprive the owner of his property or, on the other hand, to show the good faith of the accused.

As to the rulings on evidence to which exception was taken and pursued on this appeal, all useful purposes will be served sufficiently by a brief general discussion. Charles S. Coates, an accountant employed by the receiver to investigate the books of The Parker-Smith Company, and who in that connection also examined the company's accounts with various banks, was called as a witness by the State and testified at length as to results of that investigation. It was admissible, on cross-examination, to show how and to what extent persons holding notes on the particular mortgages the funds received in payment of which had been segregated, had received payment. It was also proper to show whether his examination disclosed that any of the money drawn from the segregated accounts went to any of the defendants individually. Coates having testified in chief as to the amount of cash on hand at the date of appointment of the receiver, and the amount of liabilities as shown by the books, inquiry was allowable as to the assets, other than cash, as indicated by the books. Evidence of financial conditions of which an accused had knowledge, actual or imputed, indicating solvency or insolvency, is relevant on the issue of intent. *State* v. *Moyer,* 58 W. Va. 146, 52 S. E. 30. Offers of evidence as to the value of property securing mortgages held among the assets of the company, for the apparent purpose of determining the

present actual value of those assets, were properly excluded. The above sufficiently indicates the scope of admissible evidence and renders unnecessary specific discussion of other rulings assigned and pursued.

The defendants Paul M. Smith and Clarence V. Smith, jointly, and the defendant Parker, separately, moved to set aside the verdict. That of Parker should have been granted. The trial court charged· the jury to the effect that criminal responsibility for conversion attached to such of the accused, only, "as knowingly and actually participated therein." This was substantially correct. An officer of a corporation is not criminally liable for the acts of the corporation, performed through other officers or agents, in misappropriating money, nor is he criminally accountable for the acts of another officer, unless such acts are done by his authority or permission or with his knowledge and acquiescence and in the execution of a criminal purpose on his part. *State* v. *Carmean,* 126 Iowa, 291, 102 N. W. 97; *People ex rel. Carvalho* v. *Warden City Prison,* 118 N. Y. Supp. 487; *Christner* v. *State,* 37 Okl. Cr. 95, 257 Pac. 330; 14a Corpus Juris, p. 244. It was undisputed that Parker was an incorporator, a director, and president of The Parker-Smith Company, but we find nothing in the evidence which tends to establish, either directly or by implication, such knowledge of the transactions here involved and active participation therein or passive acquiescence and approval as would render him criminally answerable therefor.

On the second day of the trial, when only five jurors had been chosen, the State sought to exercise a peremptory challenge of one of the jurors already accepted. Counsel for the defendants objected, whereupon the court, itself, excused the juror in question. This action is made a ground of appeal. The right of the court, in a proper exercise of discretion, to dis-

charge or reject a juror, of its own motion, for good cause, is generally recognized and obviously salutary. 35 Corpus Juris, pp. 360, 363; 2 Wharton's Criminal Procedure (10th Ed.) § 1437. Such action is reviewable on appeal, however, and the record should disclose the reason or cause for rejection or discharge. The record before us does not enable us to determine whether there was abuse of discretion in the present instance.

Neither present purposes nor those of a new trial appear to require or warrant discussion of the reasons of appeal not covered by the foregoing.

There is error and a new trial is ordered.

In this opinion MALTBIE, HAINES and BANKS, Js., concurred.

WHEELER, C. J. (dissenting in part). I concur in the opinion except in its holding that the trial court was in error in refusing to grant defendant Parker's motion to set aside the verdict against him, and am of the opinion that the motion should not have been granted. The holding by this court that the verdict against Parker should have been set aside means that there was no sufficient evidence upon which the jury could have reached their verdict against him. He was an incorporator of this company and a director and the president of the company from its incorporation. The evidence offered by the State that Parker was in the active management, direction and control of the company was uncontradicted. Parker failed to take the stand, but he did offer evidence by others that he did not execute the releases nor sign any checks. From all the evidence it was a reasonable and fair inference for the jury to draw that Parker the president was guilty, precisely as the other two executive officers of this

company were found guilty by the jury, and their verdict as to these two the court holds should not be set aside.