STATE OF CONNECTICUT *v.* FRANKLIN ALDRIDGE

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 26031

STATE OF CONNECTICUT *v.* ROBERT S. PALMER

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 26032

Memorandum filed May 27, 1964

*John D. LaBelle,* state's attorney, for the state.

*Francis Danaher,* of Meriden, for the defendant in the first case.

*John J. Kenny* and *Leslie R. Brimmer,* of Hartford, for the defendant in the second case.

PARMELEE, J. The defendant Franklin Aldridge was informed against in two counts for violations of the General Statutes of the state of Connecticut.

The first count alleges a violation of § 53-262 of the General Statutes, which reads as follows: "Sec. 53-262. Unlawful taking of fees and commissions. Any person, being a public officer, trustee or agent, or a member of the board of management of any public or private institution or corporation, who receives for his own use, directly or indirectly, from any person with whom he makes a contract or transacts any business, as such public officer, trustee or agent, or with whom the board of management of which he is a member makes a contract or transacts any business, any payment, commission or compensation, whether direct or under the form of some profitable sale, purchase or contract or a gratuity of any kind, by reason of, or in acknowledgment for, or in connection with, the making of such contract or the transacting of such business, shall be imprisoned not more than one year or fined not more than three hundred dollars or both." The specific charge in the first count was that on or about April 25, 1963, and on divers days thereafter, the said Franklin Aldridge, as an agent of the state of Connecticut highway department, did receive for his own use, directly or indirectly, from Robert S. Palmer, a fee appraiser for the highway department with whom the said

Aldridge transacted business as such agent, certain sums of money in connection with maps for the properties to be appraised by the said Robert S. Palmer, prepared from the files of the highway department of the state of Connecticut by said Franklin Aldridge and furnished to said Palmer.

The second count alleges a violation of § 53-266 of the General Statutes, which reads as follows: "Sec. 53-266. Corruption of employees. Any person who corruptly gives, offers or promises to an agent or employee any gift or gratuity, with intent to influence his action in relation to his principal's or employer's business, and any agent or employee who corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself, under an agreement or with an understanding that he shall act in any particular manner in relation to his principal's or employer's business, and any agent or employee who, being authorized to procure materials, supplies or other articles, either by purchase or contract, for his principal or employer or to employ service or labor for his principal or employer, directly or indirectly, for himself or for another, receives a commission, discount or bonus from the person who makes such sale or contract or furnishes such materials, supplies or other articles, or from a person who renders such service or labor, and any person who gives or offers such agent or employee such commission, discount or bonus, shall be fined not less than ten dollars nor more than five hundred dollars or imprisoned not more than one year or be both fined and imprisoned." The specific charge in the second count accuses the said Franklin Aldridge of corruptly accepting gratuities and charges that at the town of Wethersfield on or about April 25, 1963, and on divers days thereafter, the said Franklin Aldridge, an agent or employee of the state of Connecticut highway depart-

ment, corruptly accepted certain sums of money from Robert S. Palmer with the understanding that he would furnish maps prepared from the files of the highway department of the state of Connecticut to the said Robert S. Palmer.

The defendant Robert S. Palmer was informed against in two counts for a violation of the General Statutes of the state of Connecticut. The first count alleges a violation of § 53-261 of the General Statutes, which reads as follows: "Sec. 53-261. Commission to public agents. Each officer or agent of the state or of any city, town, borough or public institution, and each person employed by any of them to procure any materials or other articles, by purchase or contract, or to employ labor, who, directly or indirectly, for himself or another, receives any allowance or reward from the person or persons making such contract, furnishing such materials or other articles or rendering such labor, and any person who gives or offers any such allowance or reward, shall be fined not more than five hundred dollars or imprisoned not more than one year." The specific charge in the first count alleges that on or about April 25, 1963, and on divers days thereafter, the said Robert S. Palmer, having been employed as a fee appraiser for the state of Connecticut highway department, paid to Franklin Aldridge, an employee of the state of Connecticut highway department authorized to approve the payments to said Palmer as a fee appraiser for appraising and reporting on property to be acquired by the state, certain sums of money.

The second count alleges a violation of § 53-266 of the General Statutes, which is the same section alleged in the second count against Franklin Aldridge and hereinbefore quoted. The specific charge in the second count accuses said Robert S. Palmer of

corrupting of employees and charges that at the town of Wethersfield on or about April 25, 1963, and on divers days thereafter, the said Robert S. Palmer corruptly gave to Franklin Aldridge, an agent or employee of the state of Connecticut highway department, said sums of money with intent to influence his action in relation to his employer's business.

Franklin Aldridge has been continuously in the employ of the state of Connecticut highway department since 1932 with the exception of time out for military service from 1942 to 1946. He has received successive promotions within the department, receiving the title of highway division chief of the division of titles in the bureau of rights of way. During the period of time that Aldridge held this title of division chief, the state was acquiring rights of way for the construction of a new highway through the town of Cromwell, to be known as route 72. The state set out to acquire properties along this route either by negotiation or condemnation. These matters having to do with the layout of highways and the acquisition of property for this purpose are under the general jurisdiction of the bureau of rights of way of the state highway department. The bureau of rights of way of the state of Connecticut is subdivided into five divisions, and the head of each division is designated as a division chief. These divisions are as follows: (1) division of boundary and geographic survey; (2) division of acquisition; (3) division of appraisal; (4) division of administration; (5) division of titles.

These five divisions are headed by the director of rights of way and an assistant director of rights of way. Each division has separate and distinct functions and duties in connection with the operation of the bureau. The division of boundary and geo-

graphic survey prepares the layout and maps. The division of acquisition negotiates with the property owners for the acquisition of the property involved. The division of appraisal is directly in charge of hiring the fee appraisers and determining the compensation which is to be paid to the fee appraisers. The division of administration has administrative duties not specifically described during this trial. The division of titles, of which the defendant Aldridge is chief, is charged with searching or examining the titles of the properties so that the negotiations can be conducted with the property owners by representatives of the division of acquisition. After the negotiations by the division of acquisition are either successful or unsuccessful, the acquisitions are returned to the division of titles for the purpose of preparing deeds or condemnation records as the case may require. The division of titles has nothing whatever to do with negotiating for, or the acquisition of, the properties involved or the determination of the amount of money to be paid for the property. If there are any limiting conditions in connection with the title that should be considered in the transfer of the title to the state, then those conditions are related back to the title division, which division prepares the proper deeds in accordance with the terms of the negotiations which have been carried out by the division of acquisition. The division of titles has no jurisdiction whatever in the matter of selecting or hiring fee appraisers nor of determining in any manner the amount which they shall receive, nor determining in any manner the properties which shall be assigned to them for appraisal or the amount of money which is to be paid to the appraiser for that appraisal. Each of the five division chiefs acts independently in his own field, their work all being coordinated under the director and assistant director of the bureau of rights of way.

After an appraiser has finished his report, he files the same with the appraisal division and submits his bill to the appraisal division for the services rendered. These bills are then reviewed by the appraisal division to see that the bills coincide with fees previously agreed upon between the appraiser and the appraisal division. Upon the satisfaction of the personnel in the appraisal division that the bills are proper, a payment voucher is prepared, to which is attached the bill of the real estate appraiser. The bill of the appraiser is stamped as follows: "Appraisal services rendered and bill approved for payment by—(signature of a proper officer in the Appraisal Division)—Dated." This bill with the stamp and approval signature is then attached to the regular state of Connecticut voucher prepared for the comptroller's department and is endorsed in the upper left-hand corner: "Goods received—(signature of an authorized person in the Appraisal Division), prices and extensions correct." The voucher with the approved bill attached is then forwarded to the title division for proper coding for accounting purposes so that the bill may be charged against the proper account and further to ascertain that there are funds sufficient in that account to pay the bill. The highway division chief of the division of titles having satisfied himself that the proper coding was stated on the bill so that the payment for the bill would be charged against the proper account and that there were funds available for paying the bill, then the voucher is approved for payment by him. In the eight cases now before this court, these vouchers were signed by the defendant Franklin Aldridge as division chief of the division of titles.

The highway division chief of the division of titles has no discretion at all as to the amount of a bill bearing the stamp of approval from the appraisal

division. His approval simply certifies that there are funds in the particular account with which to pay the bill; that the account is properly coded; and that all of the requirements for passing good title have been complied with.

Before negotiations for acquiring the property can be properly undertaken, it becomes necessary of course to obtain appraisals of the property affected. Two competent appraisers are obtained to prepare and submit a carefully detailed appraisal statement of the value of the property taken. These are known as contract appraisers. A contract appraiser receives his employment and assignment through the following procedure:

1. The chief or assistant division chief of the appraisal division sends a form letter to a qualified appraiser or appraisers, inviting each one to "submit a firm appraisal fee" in duplicate, within five days, on a designated property. This letter cautions the appraiser not to proceed with the appraisal "until your fee has been approved, and you are formally notified," after which the work must be completed in a specified number of days.

2. The invited appraiser or appraisers submit their fee bid for the job in a letter addressed to the highway division chief or assistant in the appraisal division.

3. If the fee bid is accepted by the appraisal division, the appraiser is notified by the appraisal division in writing that his fee for appraising the designated property has been approved and he is authorized to proceed with the appraisal, and to submit to the appraisal division an original and two copies of all appraisal reports, and, further, a date is assigned by which the assignment must be completed.

An early preliminary step in building a new highway, of course, is to lay out the course and extent of the highway. This necessitates engineering surveys and the making of maps showing the locations of the boundaries of the new highway. This is done by the division of boundary and survey. Many copies of these maps are made and are available to all parties interested, including not only the property owners themselves but also local municipal officials and also any contract fee appaisers. These maps generally were not complete as to the final details of the taking but were usually supplemented by later maps showing the details of the taking lines as they specifically affected the adjoining property. In many instances, the property taken by the highway department consisted of only a portion of the entire property, as when a new highway bisected a considerable portion of the entire property affected. In such a case, the final "taking map" showed only the portion of the entire property involved which was adjacent to the taking lines. In the case of a partial taking, the fee appraisers were required to report the value of the property before the taking and the value of the property after the taking. The appraisers were further required to submit with each appraisal two substantially accurate detailed maps drawn to scale, one showing the entire property of the owner before the taking and the other showing the entire property remaining to the property owner after the taking. At the time each appraiser was given the assignment to appraise a property, each one of them was also given a copy of the "taking map." In case of a partial taking such as some of those which were before the court during this trial, the "taking map" furnished to the appraisers was inadequate to portray the details necessary for them to prepare the "before taking" and "after taking" maps required to be submitted with their appraisals. The

appraisers were advised at the time of their assignment that all the information which the highway department had concerning these properties would be available for their use on a "come and get it" basis.

During the period of time alleged in the information, Robert S. Palmer, an appraiser living in Middletown, Connecticut, which was in the general area of the proposed construction, was designated as a fee or contract appraiser on several of the properties in the town of Cromwell. Palmer is a qualified appraiser and also a lawyer, but not a qualified map maker. He approached Aldridge, whom he knew to be familiar with the requirements in these matters, asking if he would be able and willing to prepare for him the sketch maps necessarily required to be submitted with the appraisal reports. Palmer agreed to pay Aldridge for this work. Aldridge agreed to prepare the maps required in each case on his own time and agreed to accept for his services a sum of money equal to one-sixth of the fee paid by the state to Palmer for his appraisal. This arrangement mutually agreed upon between them was in no sense of the word a partnership arrangement but was entered into by them as a simple and fair way to estimate and allot the value of the services rendered by Aldridge without the necessity of rendering time-spent bills in each case. The payment to Aldridge was based only on the original contract appraisal fee or revisions thereto, without relation to any other fees received by Palmer for other services, such as time spent in court as a witness.

Franklin Aldridge was paid by Robert S. Palmer for producing the maps which Palmer filed with his appraisal reports. All of this work on these maps was done by Aldridge on his own time. None of it was done during the hours for which he was

paid by the state. The copies of the maps from which these special appraisal maps were made were public property available to anyone. Aldridge took to his home such copies as were necessary for compiling these special appraisal maps, and the copies were returned to the department after the composite maps for appraisal purposes were finished at his home. None of this work was done by Aldridge at the offices of, or on premises of, the highway department. Each payment to Aldridge was made by a personal check to him from Palmer, leaving a clear and correct record of the transaction. There is no evidence that the payments to Aldridge were other than a fair fee for the personal services rendered by him to Palmer. The highway department has had long association with Palmer as an appraiser. He is well qualified to appraise property in the areas where he has been assigned. His work as an appraiser has been of high caliber, and his charges for appraisal services were based upon a competitive bid sought and approved by a department over which Aldridge had no authority or control. The fact that Aldridge agreed to accept a percentage of Palmer's appraisal fee in full payment for his services in making the appraisal maps does not, of itself, spell out either a partnership or other wrongdoing. Without knowing the entire background, such an arrangement, however, might give rise to a suspicion calling for a complete disclosure of the facts. After an investigation lasting for many months, this trial, lasting several days, has disclosed what may be presumed to be all of the facts. Based upon these facts, the court concludes that the evidence fails to establish that the accused Franklin Aldridge corruptly accepted gratuities or sums of money from Robert S. Palmer for any corrupt purpose or that the said Robert S. Palmer corruptly gave Franklin Aldridge sums of money with intent

to influence his action in relation to the business of the state of Connecticut. This determines the issues as to the second count (violation of § 53-266 of the General Statutes) in the informations against both defendants.

The first count against Aldridge alleges violation of § 53-262, quoted herein, and the first count against Palmer alleges violation of § 53-261, quoted herein.

Franklin Aldridge was an employee of the state of Connecticut in the highway department bureau of rights of way as division chief of the division of titles. As such an employee, he had no authority as employee or agent or otherwise to make any contract or transact any business on behalf of the state of Connecticut with the said Robert S. Palmer. It is the intention of this statute to prohibit a person who has the authority to make contracts or transact business on behalf of a public or private corporation from accepting any payment, commission or compensation or gratuity of any kind from the person with whom he makes the contract or transacts business. The meaning of § 53-262 cannot be extended or enlarged to include an employee who has no authority or control or who, in fact, exercised no authority or control whatever over the contract entered into between the appraisal division and Robert S. Palmer.

The state highway department has from time to time, during different administrations, issued regulations governing the performance of outside work by employees of the department. In some instances, outside work was permitted provided permission was obtained from certain superiors. The files of the department do show, however, that Franklin Aldridge was given permission to perform outside work several years ago by the then highway commissioner. The court is not required to pass upon

the question whether this permission is still in force. The extent and interpretation of department regulations is not essentially before this court, which is presently called upon to determine if there has been a violation of a criminal statute.

Robert S. Palmer is charged under § 53-261 with giving an allowance or reward to Franklin Aldridge, an employee of the state of Connecticut. Aldridge was not employed by the state to procure any materials or articles by purchase or contract or to employ labor. This statute cannot be enlarged by construction to cover an employee who had no authority to, nor did in fact, procure or contract for anything in behalf of the state relating to the employment of the defendant Palmer.

The information charges violation of criminal and penal statutes which must be strictly construed. Their meaning cannot be extended by presumption or intendment. *State* v. *Weber,* 121 Conn. 160, 162. Such statutes cannot be enlarged by construction to cover a case not within their literal terms, nor for the purpose of more effectually suppressing the mischief at which they are directed. *State* v. *Levy,* 103 Conn. 138, 141. In the construction of such a statute, the question is not what the legislature actually meant to say, but what is the meaning of what it did say. *State* v. *Parker,* 112 Conn. 39, 46; *State* v. *Penner,* 85 Conn. 481, 484; *State* v. *Faatz,* 83 Conn. 300, 305; *State* v. *Hurlburt,* 82 Conn. 232; *State* v. *McMahon,* 53 Conn. 407; *State* v. *Brown,* 16 Conn. 54; *Daggett* v. *State,* 4 Conn. 60.

The services rendered by Aldridge for Palmer were performed by Aldridge on his own time, entirely outside of any time or duties required to be rendered by him to the state of Connecticut as an employee of the highway department. The special appraisal maps made by Aldridge were compiled

partly by the use of copies of maps on file in the highway department, which maps were not confidential in nature but available to any interested person, and partly by personal inspection of the property on the site and examination of pertinent public records. Aldridge's work in producing accurate and fully informative maps to accompany the appraisal reports assisted Palmer in creating a superior appraisal report which not only exceeded the minimum requirements of the appraisal division but also could be of great assistance to the office of the attorney general in the event of further proceedings in court or before a state referee. Palmer as a contract appraiser could receive no greater payment from the state on any appraisal than the amount of his competitive bid, made before the contract to make the appraisal was awarded to him. Palmer hired Aldridge at his own expense to prepare a detail which would tend to make his report of greater value to the state. The services performed by Aldridge for Palmer were not in conflict with the interests of the state of Connecticut but were, in fact, in furtherance of those interests.

There is no claim on the part of the prosecution that the state of Connecticut has been defrauded in any manner by the actions of either of these defendants, nor that these actions have adversely affected the orderly and normal functions of the highway department in connection with the properties involved. Responsible employees of the state highway department who have known Franklin Aldridge as a state employee for many years have testified that he is a person of the highest integrity and that he is and has been for many years a devoted employee of the state of Connecticut. Nothing has transpired during the course of this trial from which the court could draw a different conclusion. Robert S. Palmer was described as an appraiser of long

association with the highway department who is well qualified to make appraisals in the areas assigned to him, whose appraisal work has been generally of a high caliber, and for whose services as such appraiser the state has received full value. An examination of the appraisal reports submitted as evidence reveals a meticulous attention to descriptions and details relating to value, assembled and related in a logical manner.

Franklin Aldridge, charged in the information with violation of § 53-262 of the General Statutes of the state of Connecticut in the first count and with violation of § 53-266 in the second count, is found not guilty on both counts.

Robert S. Palmer, charged in the information with violation of § 53-261 of the General Statutes of the state of Connecticut in the first count and with violation of § 53-266 in the second count, is found not guilty on both counts.