[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JULY 1, 1997
The defendant, Alex Kelly, is on trial charged with a two-count information: kidnapping in the first degree in violation of § 53a-92(a)(2)(A) and sexual assault in the first degree in violation of § 53a-70(a). The State alleges that the two offenses occurred on a public street in the town of Darien on the evening of February 16, 1986. After the close of the CT Page 3069 prosecution's case in chief the defendant filed this motion for judgment of acquittal on both charges in accordance with Practice Book Sec. 883.
DISCUSSION OF PROCEDURE
A motion for judgment of acquittal can be filed by the defendant either after the close of the prosecution's case in chief or the close of all the evidence.
 Motions for a directed verdict of acquittal and for dismissal when used during the course of the trial are abolished. Motions for a judgment of acquittal shall be used in their place. After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. Such judgment of acquittal shall not apply to any lesser included offense for which the evidence would reasonably permit a finding of guilty.
Practice Book Sec. 883.
The trial court must base its ruling on a motion for judgment of acquittal on all the evidence that has come into the case up to that point. State v. Pieger, 42 Conn. App. 460, 469 (1996). In ruling on a motion for judgment of acquittal, the trial court must determine whether "a rational trier of fact could find guilt proven beyond a reasonable doubt." State v. Delarosa,16 Conn. App. 18, 33 (1988); State v. Nival, 42 Conn. App. 307, 308
(1996).
A motion for judgment of acquittal can be filed at the close of all the evidence.
 If the motion is made after the close of the prosecution's case in chief, the judicial authority shall either grant or deny the motion before calling upon the defendant to present his case in chief. If the motion is not granted, the defendant may offer evidence without having reserved the right to do so. CT Page 3070 Connecticut Practice Book, Sec. 884.
 If the motion is made at the close of all the evidence in a jury case, the judicial authority may reserve decision on the motion, submit the case to the jury, and decide the motion either before the jury return a verdict or after they return a verdict of guilty or after they are discharged without having returned a verdict.
Practice Book, Sec. 885.
Therefore, the court cannot reserve decision to a later time on a motion for judgment of acquittal made after the close of the prosecution's case in chief. The trial court must decide that motion when it is filed. State v. Brosnan, 24 Conn. App. 473, 485
(1991).
The filing of a motion for judgment of acquittal by the defendant after the close of the prosecution's case precludes the prosecution's reopening its case to introduce additional evidence on an essential element of the crime charged. State v. Allen,205 Conn. 370, 385 (1987). "We have held that such prejudice has occurred when the state was allowed to introduce further testimony in order to cure its failure to introduce, during its case-in-chief, any evidence upon an essential element of the crime charged, a deficiency called to its attention by the defendant's motion for a directed judgment of acquittal." Wood v.Bridgeport, 216 Conn. 604, 606 (1990). This rule applies in both civil and criminal cases.
The standard that a trial judge must apply concerning evaluating the evidence on a motion for judgment of acquittal is "the evidence would not reasonably permit a finding of guilty."State v. Delarosa, supra 33. The standard requires the judge to review the evidence in the light most favorable to sustaining the State's case based on the facts established and the inferences reasonably drawn therefrom. State v. Simino, 200 Conn. 113, 117
(1986). The court's inquiry focuses on whether "a rational trier of fact could find guilt proven beyond a reasonable doubt." Statev. Scielzo, 190 Conn. 191, 197 (1983). State v. Joyner,225 Conn. 450, 455 (1993). The trial court cannot permit the jury to "resort to speculation and conjecture." State v. Rodrigues,200 Conn. 685, 687 (1986); State v. Baskins, 12 Conn. App. 313, 316
(1987). CT Page 3071
The general power of the court to enter a judgment of acquittal applies in all criminal cases even those involving the penalty of death.
 Practice Book, Sec. 883 provides that upon motion by the defendant or by the court sua sponte "the judicial authority shall order the entry of a judgment of acquittal . . . if the evidence would not reasonably permit a finding of guilty." In the trial of ordinary criminal cases, the power to order an acquittal is an important safeguard against irrational and unsupported jury verdicts. United States v. Ubl, 472 F. Sup. 1236, 1237 (N.D.Ohio, 1979); United States v. Melillo, 275 F. Sup. 314, 318
(E.D.N.Y. 1967); 2 C Wright, Federal Practice and Procedure. (1982) 461, pp. 637-38; A. Spinella, Connecticut Criminal Procedure, (1985) p. 708. As a device for controlling the discretion of the jury, the power to acquit is particularly important in the context of capital sentencing. If, on the basis of the evidence adduced at the entire hearing, the jury could not reasonably fail to find that a mitigating factor exists or that no aggravating factor exists, the trial court may direct appropriate findings, thereby "acquitting" the defendant of the death penalty. See State v. Stankowski, supra 126. Alternatively, the court may, in the interest of fairness, exercise its discretion not to enter a mistrial even if it determines that "acquittal" is inappropriate. Such an exercise of discretion is reviewable on appeal in the event of its abuse. See General Statutes 54-56: State v. Corchado, 200 Conn. 453, 458-59, 512 A.2d 183
(1986).
 State v. Daniels, 207 Conn. 374, 396 (1988).
Therefore, one of the purposes of a Motion for Judgment of Acquittal is for the trial court to prevent the jury from rendering irrational, unsupported or inconsistent verdicts. Once rendered a jury's inconsistent verdict is usually upheld by the trial court. A trial court's decision on a Motion for Judgment of Acquittal is the opportunity to prevent such inconsistent, irrational or unsupported jury verdicts. CT Page 3072
 We tolerate inconsistencies in unified jury verdicts in criminal cases, not because of any singular virtue we attribute to inconsistency, but rather out of deference to the nature of the jury and the role it plays in our jurisprudence. There is no question but that a jury in a criminal trial has the power to render a verdict of acquittal that is wholly at odds with the law and the facts . . . We recognize that the jury is in a sense the conscience of the community and can, for example, render a verdict to mitigate an overly severe punishment . . . Similarly, in compromising in order to reach a unanimous verdict, a jury is often fulfilling its role as a cross-section of the community that it is supposed to represent. Occasional anomalies are the price of unanimity. . .
 State v. Aparo, 223 Conn. 384, 392 (1992).
Although the appellate courts may tolerate inconsistent unified jury verdicts in criminal cases, a trial court at the outset has an obligation to prevent such verdicts.
In granting a judgment of acquittal. The trial court "shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser — included offense for which the evidence would not reasonably permit a finding of guilty." Practice Book, Section 883. In this case the State and the defendant have indicated that they will not request a jury charge on any lesser included offenses of either kidnapping in the first degree or sexual assault in the first degree. State v. Johnson,26 Conn. App. 553, 561 (1992). In any event any lesser included offense of kidnapping includes the statutory element of "restrain." C.G.S. 53a-91(1); C.G.S. § 53a-94; C.G.S. §53a-95; C.G.S. § 53a-96.
P.B. 883 motions for judgments of acquittal are usually made on a pro forma basis by the defendant and routinuely denied without extensive argument or memoranda. The granting of such a motion is usually not addressed by appellate courts. One example of the rare consideration of a motion for judgment of acquittal by a Connecticut appellate court is State v. Carpenter,214 Conn. 77 (1990). The Supreme Court concluded that the "evidence presented by the state was insufficient to simply preclude the reasonable hypothesis that the defendant, out of frustration, engaged in reckless conduct that caused the death of the victim. CT Page 3073 The evidence was therefore insufficient to prove beyond a reasonable doubt that the defendant had the specific intent to cause the victim's death. Accordingly, the trial court should have granted the defendant's motion for judgment of acquittal on the murder charge." State v. Carpenter, supra 84.
A motion of judgment of acquittal in a multiple sexual assault case granted by the trial court was discussed by the Appellate Court in its factual recitation only in State v. Dukes,29 Conn. App. 409, 410 (1992). There were two separate incidents: the first occurring at 11:30 p.m. in the living room where the victim was sleeping on a couch and the second following in the defendant's bedroom. The defendant was charged in each incident with sexual assault and unlawful restraint. The trial judge granted the defendant's motion for judgment of acquittal as to the unlawful restraint count arising from the first incident when the defendant got into the living room couch/bed with the victim and committed the sexual assault. The trial court permitted both the sexual assault and the unlawful restraint charge on the second incident to go to the jury where "the defendant then grabbed the victim and pulled her onto his bed." The jury returned a verdict of guilty on both counts of sexual assault and not guilty on the remaining unlawful restraint on the second incident. State v. Dukes, supra 414.
ELEMENTS OF THE SEXUAL ASSAULT IN THE FIRST DEGREE
The defendant is charged with sexual assault in the first degree in violation of C.G.S. 53a-70(a). "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or by the threat of use of the force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.
The evidence to date indicates that the defendant and the complainant had sexual intercourse in the back of a motor vehicle on a public highway in the town of Darien on the evening of February 10, 1986. The complainant testified that the defendant threatened to kill her before, during and after the sexual intercourse. She further testified that the defendant used his superior physical force to lay on her and move her to the back of the vehicle. She testified that he forcibly removed portions of her clothing and held her down while he engaged in vaginal sexual CT Page 3074 intercourse. The defendant denies force and claims that the sexual intercourse was consensual.
No further discussion is needed. If the facts as testified to by the complainant are accepted by the jury, this evidence would "reasonably permit a finding of guilty" of sexual assault in the first degree. P.B. 883. The motion for Judgment of Acquittal as to the sexual assault in the first degree count is denied.
ELEMENTS OF KIDNAPPING IN THE FIRST DEGREE
The information also charges the defendant with kidnapping in the first degree. The operative portion of the kidnap statute is as follows: "A person is guilty of kidnapping in the first degree when he abducts another person and when: . . . (2) he restrains the person abducted with intent to (A) . . . violate or abuse him sexually." C.G.S. § 53a-92(a)(2)(A) A Kidnapping in the first degree is an intentional crime. There are three separate intentional acts involved in kidnapping; the first is the intent as an element of "abduction," the second is the intent as an element of "restrain." third is the intent to violate or abuse the complainant sexually.
"Abduct" and "restrain" are defined by statute.
 Abduct means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use physical force or intimidation.
C.G.S. § 53a-91(2).
 Restrain means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein "without consent" means, but it is not limited, to (a) deception and (b) any means whatever. . .
C.G.S. § 53a-91(1). CT Page 3075
The defendant claims that the kidnapping in the first degree and the sexual assault arose out of the same incident. He further claims that there is no distinct act that occurred outside the confines of the actual sexual assault which amounts to kidnapping in the first degree. The defendant argues, therefore, the kidnapping in the first degree should not be submitted to the jury. P.B. 883.
DISCUSSION OF ELEMENTS OF KIDNAPPING IN THE FIRST DEGREE
The crime of kidnapping in the first degree in a sexual assault context has been upheld as constitutional and not vague or uncertain as to its terms. State v. Chetcuti 173 Conn. 165,168 (1977). The Chetcuti case involved an unusual set of facts. It was a classic kidnapping with a stranger abducting the alleged victim off the street and sexually assaulting her in his apartment. The attempted sexual assault was brutal. The defendant was not charged with attempted sexual assault, only kidnapping.
The defendant argued that kidnapping merged with sexual assault, and the State, by not prosecuting for sexual assault, gave up their right to prosecute for kidnapping. The defendant claimed "that where the abduction and restraint of a victim are merely incidental to some other underlying offense, such as sexual assault, the abduction and restraint cannot form the basis of a verdict of guilty on a charge of kidnapping." State v.Chetcuti, supra 170. The court held "the legislature of this state has seen fit not to merge the offense of kidnapping with sexual assault or with any other felony." State v. Chetcuti,
supra 170.
"Restrain" and "Abduct" were statutorily defined in 1969. C.G.S. 53a-91. Connecticut case law has since held that there is neither a time requirement for the restraint nor a distance requirement for the asportation to constitute the crime of kidnapping. State v. Chetcuti, supra 170; State v. Torrence,1 Conn. App. 697, 708 (1984); aff'd, 196 Conn. 430 (1985). These two issues of time and distance are at the heart of the defendant's motion for judgment of acquittal.
The layman's view of kidnapping/rape differs from that contained in Connecticut statutes. A layman's version involves abducting a victim from a public place and bringing the victim to another location where sexual assault or other crimes may occur. This typical scenario is found in State v. Anderson, 212 Conn. 31
CT Page 3076 (1989). "In the first count of kidnapping, the state alleged that the defendant had approached the victim on Prospect Street in Bloomfield, held her at knifepoint, and forcibly directed her to a nearby schoolyard. Once in the schoolyard, the defendant attempted to have sexual intercourse with the victim, thereby making attempted sexual assault the underlying felony alleged in the first kidnapping count. In the second count of kidnapping, the state alleged that the defendant, still holding his knife, had taken the victim from the schoolyard to his home. In his bedroom, he allegedly had sexual intercourse with the victim, thereby making sexual assault the underlying felony alleged in the second kidnapping count. State v. Anderson, supra 38; seeState v. Palmer, 206 Conn. 40, 44-45 (1988).
Under Connecticut law, "a conviction may be had for both offenses even though both crimes arose out of the same set of facts." State v. Silver, 139 Conn. 234, 244 (1952): State v.Fico, 147 Conn. 426, 429 (1960). "Where the same act combines the necessary elements of two or more distinct offenses, the difference not being merely one of degree, prosecution for one will not bar prosecution for another, and where one act constitutes several crimes, there may be a separate prosecution for each . . . State v. Andrews, 108 Conn. 209, 215 (1928). Statev. Fico, supra 429.
The current Connecticut kidnapping statute was drafted from similar New York statutes. New York has developed a doctrine of "merger" regarding kidnapping and other related contemporary offenses. People v. Lombardi 20 N.Y.2d 266, 229 N.E.2d 206,282 N.Y.S.2d 519 (1967); People v. Levy, 15 N.Y.2d 159,204 N.E.2d 842, 256 N.Y.S.2d 793, cert. denied. 381 U.S. 938, 85 S.Ct. 1770,14 L.Ed.2d 701 (1965). The doctrine holds that the act of kidnapping merges into the other crime charged where the kidnapping was merely incidental to such crime. The argument for merger of kidnapping and underlying sexual assault finds support in State v. Dubina, 164 Conn. 95, 100 (1972).
Connecticut has rejected the doctrine of merger. State v.Amarillo, 198 Conn. 285, 304 (1986); State v. Briggs,179 Conn. 328, 338-39 (1979); State v. Johnson, 185 Conn. 163, 177 (1981);State v. DeWitt, 177 Conn. 637, 641 (1979). After 1972 the "Supreme Court has repeatedly held that a defendant may be convicted of two crimes that derive from the same conduct where the state is able to prove beyond a reasonable doubt the essential elements of each crime." State v. Burak, 12 Conn. App. 613, CT Page 3077 615-16 (1987); State v. Amarillo, supra 305; State v. Vass,191 Conn. 604, 614-15, 616 n. 9 (1983); State v. Briggs, supra
339.
"The legislature of this state has seen fit not to merge the offense of kidnapping with sexual assault or with any other felony. Nor has the legislature imposed any time requirement for the restraint, nor any distance requirement for the asportation to constitute the crime of kidnapping." State v. Chetcuti, supra
170. "Where the intent required to constitute kidnapping in the first degree is present, 'the fact that the perpetrator's underlying motive for the detention is the consummation of sexual assault' does not preclude a conviction for kidnapping." State v.Amarillo, supra 305; State v. Lee, 177 Conn. 335, 344 (1979). Trial courts have not committed error, when in a sexual assault and kidnapping case, there was no jury instruction that the kidnapping could have been merely incidental to the crime of sexual assault. State v. Amarillo, supra 299. State v. Johnson,
supra 178.
The Supreme Court has analyzed kidnapping convictions under double jeopardy standards. A second kidnapping conviction arising out of a continuous course of conduct was held to be a violation of the defendant's constitutional rights. State v. Freeney,228 Conn. 582, 587 (1994). "The proper double jeopardy inquiry when a defendant is convicted of multiple violations of the same statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute." State v. Rawls, 198 Conn. 111, 121
(1985) State v. Freeney, supra 587. "We conclude that where there are multiple convictions of the same crime arising from a single continuing incident, the proper remedy, when there is a consequential double jeopardy violation, is the setting aside of both the surplus conviction and the penalty ascribable to it.State v. Freeney, supra 589.
Despite the clear law on merger, our appellate courts have recently considered time and distance as factors in a kidnapping case. "While we recognize that there are conceivable factual situations in which charging a defendant with kidnapping based upon the most minuscule duration of confinement would result in an absurd and unconscionable result . . . we do not find this case to present such a situation." (Citations omitted. Internal quotation marks omitted.) State v. Troupe, 237 Conn. 284, 315
(1996). CT Page 3078
State v. Troupe was preceded by State v. Tweedy,219 Conn. 489, 503 (1991). "While we recognize that there are conceivable factual situations in which charging a defendant with kidnapping based upon the most minuscule movement would result in an 'absurd and unconscionable result'; State v. Jones, 215 Conn. 173, 180,575 A.2d 216 (1990); we do not find this case to present such a situation." State v. Tweedy, supra 503. In Tweedy, the defendant claimed that the evidence showed that the victim was moved from the desk to a bed in the same room calling that movement "minuscule." The Supreme Court noted that there was more movement evident in the record; "the defendant after forcing his way into the victim's apartment, moved the victim from the entryway of her apartment through the living room down the hallway to the desk in her bedroom." . . . "The totality of these movements formed the basis of the state's charge, and defendant's conviction of kidnapping with intent to violate or abuse the victim sexually at her apartment. General Statutes § 52a-92(a)(2)(a)." State v.Tweedy, supra 503. Connecticut has adopted and applied the "minuscule movement would result in an absurd and unconscionable result" test since 1990. State v. Jones, supra 180; State v.Tweed supra 503, and State v. Troupe, supra 315.
The minuscule movement test originated in 1973 in a prison riot case in Michigan. People v. Adams, 389 Mich. 222,205 N.W.2d 415. Although Connecticut has consistently rejected the incidental merger rule of New York, it has adopted and applied the "minuscule movement" test. People v. Adams refers to the New York Levy-Lombardi rule stating other "representative courts perceived that unrestrained recognition of any movement at all was adequate to support kidnapping was letting the pendulum swing to absurd and unconscionable results." People Adams, supra 420. Rejecting the New York Levy-Lombardi rule, Michigan applied six statutory factors to determine if kidnapping is an independent crime. 1) Asportation must be interpreted to achieve the legislature's intention to define the major crime of kidnapping, not minor crimes that meet the general definition, 2) The movement element is not sufficient if it is "merely incidental" to the commission of another underlying lesser crime, 3) If the underlying crime involves murder, extortion or taking a hostage, movement incidental thereto is generally sufficient to establish a valid statutory kidnapping, 4) The movement adds greater danger, 5) Secret confinement and 6) Most movement issues are jury questions. CT Page 3079
DISCUSSION OF KIDNAPPING EVIDENCE IN PROSECUTOR'S CASE-IN-CHIEF
The court will analyze the evidence for three distinct incidents: First, the initial entry into the motor vehicle by the Complainant; Second, the movement of the complainant from the front passenger seat to the rear of the Jeep Wagoneer; and Third, the driving of the motor vehicle to a small cul-de-sac road just beyond the victim's house. Each of the next three paragraphs will discuss the evidence in the case most favorable to the State.
First: The initial entry into the motor vehicle. The complainant, who had a 11:30 p.m. curfew, had been given a ride by a friend to a teenager party. The friend had refused to give her a ride home. She was sixteen and did not have a driver's license. She had no other form of transportation,. She attempted to solicit a ride from the other people at the party to no avail. She had just met the defendant at the party. He offered to give her a ride home. She needed the ride so that she would get home as close to her curfew as possible. She got in the defendant's car, and he drove in the direction of her house. There was no prior conversation or social interaction between the defendant and the complainant except for the conversation regarding the ride home and the fact that the car belonged to the defendant's girl friend.
Second: The movement of the complainant from the front passenger seat to the rear of the Jeep Wagoneer. The complainant was a passenger in the right part of the two front bucket seats. The defendant stopped at the cul-de-sac, turned off the engine, leaned over and put his weight on the victim. He held her by the throat and eventually dragged her into the back area of the car after he had removed the rear seat and put it in a down position. While in the back of the Jeep Wagoneer he had vaginal sexual intercourse with the complainant while putting his weight on her. This removal from the front seat to the back seat is being claimed by the State as asportation and restraint. This movement has formed the basis of the defendant's motion for judgment of acquittal. This issue will be discussed in greater detail.
Third: The driving of the motor vehicle to a small cul-de-sac road. The evidence indicates that the motor vehicle trip took fifteen minutes from the party to the area of the complainant's home. Little or no conversation ensued. Apparently, one mile before the complainant's house, the defendant stopped his car at a stop sign, put the car into park and attempted twice to kiss CT Page 3080 her. The complainant rebuffed the defendant. He also asked her to smoke marijuana, and she refused. They continued to drive in the direction of her house. It was snowing. There was no evidence indicating that the defendant knew where the complainant lived. The transcript shows the following testimony when the complainant saw that her house was coming up. "I said please stop, this is my house. I want to get out of the car, and he said I will turn around. I said okay." He did not stop at that point but immediately made a turn to the next road to the left, 100 feet past the complainant's house. He drove a few hundred feet down that road. It was a dead end road. The defendant turned at the cul-de-sac to head back toward the complainant's house. The defendant stopped the motor vehicle in the turnaround circle. He immediately physically assaulted the victim and attacked her sexually. The sexual assault occurred in the front of the jeep wagon and ended in the rear cargo area.
This set of facts prompts the State's claim of "deception" that the defendant knew and intended to commit the sexual assault when he stopped at the stop sign and that he knew or should have known where the complainant lived and deliberately drove past her house. Any consent obtained from the complainant was as a result of the defendant's deception in not disclosing his true intent to have sex. The asportation took place from the stop sign to the cul-de-sac, thus, meeting the time and the distance requirements of kidnapping in the first degree. i.e. abduction and restraint.
DISCUSSION OF CONNECTICUT CASES ON KIDNAPPING
This portion of the memorandum of decision will discuss a number of Connecticut cases in which either unlawful restraint and/or kidnapping were charged together with another violent act; burglary, robbery or sexual assault. These cases will demonstrate treatment of the kidnapping time and distance limitations. Although there is no Connecticut case in which a judgment of acquittal was entered on a kidnapping count when the underlying felony was either burglary, robbery or sexual assault, based upon the "minuscule movement and absurd and unconscionable result," all reported cases show greater movement than set forth in the facts of this instant case.
State v. Lee, 177 Conn. 335, 336 (1979). State v. DeWitt,177 Conn. 637, 639 (1979). The victim while starting down the stairs of his single-family house encountered the defendant coming up the stairs. The defendant pulled out a pocket knife and ordered CT Page 3081 the victim to return to his bedroom. The victim was directed to sit on the bed while the defendant took things from the drawers and cabinets. The co-defendant tied the victim to the bed with a lamp cord. A sheet was tied around his head so he could not see. Convictions of burglary, robbery and kidnapping were affirmed.
State v. Tweedy, 219 Conn. 489, 503 (1991). The defendant, after forcing his way into the victim's apartment, moved the victim from the entry way of her apartment through the living room and down the hallway to her bedroom. This abduction was held sufficient for the conviction of first degree kidnapping, with intent to violate or abuse the victim sexually.
State v. Troupe, 237 Conn. 284, 288 (1996). The defendant wanted to date the victim, and he agreed to accompany her on a shopping trip. At the defendant's apartment building, he came down to her car and told her that he was not ready to leave and suggested that she come up to his apartment while he finished dressing. The victim notified the defendant that she was leaving. He walked over to the couch were the victim was seated and told her that he did not want her to leave. After telling her how pretty she was, he knelt down in front of her against her wishes and placed his hand under her blouse and sexually molested her. The victim finally managed to pull away from the defendant but as she tried to leave, he grabbed her, pulled her down onto a nearby mattress. She freed herself, tried to leave and the defendant caught her. He fell on top of her. He sexually assaulted her and prevented her from leaving the apartment until he had finished dressing. The sexual assault and kidnapping convictions were affirmed.
State v. Briggs, 179 Conn. 328, 338 (1979). The merger doctrine was rejected on the charge of kidnapping in the second degree and sexual assault. Although the defendant was initially invited into the victim's car, he thereafter forcibly took control of the automobile and drove several miles. He forcibly pulled the victim from the car into a wooded area. There he forced her to have sexual intercourse. Both convictions were upheld.
State v. Tucker, 226 Conn. 618, 621 (1993). "The defendant, a stranger to the victim, had followed her along Edgewood Avenue. He had then approached her. grabbed her hands, picked her up, carried her behind the store and threw her to the ground. The victim had attempted to resist and the defendant had punched her CT Page 3082 in the face numerous times, choked her and threatened her that he would kill her if she continued to resist and scream. The defendant had then ripped off the victim's slacks and underpants had pulled down his own trousers and had forced the victim to engage in vaginal intercourse." Sexual assault and kidnapping convictions were affirmed.
State v. Marra, 215 Conn. 716, 728 (1990). While screaming, the victim was carried by his arms and legs from the apartment building and thrown into a waiting Van. Robbery, murder and kidnapping convictions were affirmed.
State v. Joyner, 225 Conn. 450, 453 (1993). Police heard crying from an apartment, a woman screaming for help. The defendant appeared in an upstairs window, but refused the officers' request to open the door. After breaking down the door to gain entry, they told the defendant to come downstairs. The defendant first refused, threatened to kill the police officers with a gun, but he ultimately went down himself, holding the victim. The victim had been beaten with fists and a stick. Sexual assault in the first degree and kidnapping convictions were affirmed.
State v. Lake, 43 Conn. App. 715, 717 (1996). The victim agreed to drive the defendant to his home after she stopped at her apartment to receive a telephone call. When they reached the victim's apartment, the defendant followed the victim inside even though the victim asked him to wait in the car. The defendant grabbed the victim around her throat, choking her. He dragged her up the stairs to the living room, smashing her body into the wall and screaming at her to shut up. He sexually assaulted her on the living room couch in her own apartment. Sexual assault and kidnapping convictions were affirmed.
State v. Carroll, 20 Conn. App. 437, 439 (1990). The defendant forced the victim into his car and displayed a handgun in response to repeated resistance by the victim. The conviction of kidnapping was affirmed.
State v. Paolella, 211 Conn. 672, 675 (1989). The defendant forced his way into the victim's house at rifle point. During the course of the ensuing argument between this estranged married couple, the victim tried to escape from the house through both the doors and windows. The defendant forcibly prevented her from doing so. The convictions of kidnapping with a firearm and CT Page 3083 assault were affirmed.
State v. Vass, 191 Conn. 604, 606 (1983). Convictions of sexual assault and kidnapping were affirmed. The victim, a grocery store clerk, had just closed the store. The defendant, whom the victim recognized as a customer, asked her to re-enter store so he could purchase a package of cigarettes which he did. As the victim was again preparing to leave the store the defendant pushed around her neck and placed a knife under her chin. At knifepoint, he ordered her to lock the door, go with him to the back of a small stockroom and undress. The victim was sexually assaulted on the floor of the stockroom. He continued to threaten her with his knife, and slapped her for crying too loudly. He warned her he would send three of his friends to see her if she reported the incident to anyone.
State v. Suggs, 209 Conn. 733, 737 (1989). The defendant pushed her from the hallway onto the outside steps and then dragged her to the garage property next door. He pushed her against a fence. The defendant then pulled her to an area behind the garage to an unused field. The defendant then forcibly brought the victim to an abandoned automobile and sexually assaulted her. The convictions of kidnapping and sexual assault were affirmed.
State v. Torrence, 1 Conn. App. 697, 704 (1984). Robbery, assault and kidnapping convictions were affirmed. The victim went to the cellar of his home, where the defendant, who had broken in was hiding. The defendant hit the victim on the head with a hammer: took his wallet; tied his legs with ropes; hit him again repeatedly on the head with a hammer; placing a chopping block on his chest cracking three of his ribs: threw kerosene and oil into his eyes: pulled the victim, still tied at his legs, into a cold storage room and shut the door: and went upstairs where he took more cash and rings of the victim.
There is only one case involving "deception" in a kidnapping and sexual assault incident. The facts commenced with the consensual riding in a motor vehicle and both convictions were affirmed by the Supreme Court in State v. Smith, 198 Conn. 147,149 (1985). A more detailed recitation of the facts is needed to fully understand this case. The victim, sixteen, was visiting a girl friend who lived four houses away in West Haven. While at the girl friend's house she met some of her friend's relatives including the defendant who was her girl friend's 42-year-old CT Page 3084 uncle. During the afternoon the defendant uncle voluntarily drove the victim and his niece, the victim's girl friend, to various locations.
 On the return trip the defendant drove past the victim's house and dropped his niece off at her house. The defendant had said earlier that he was returning to Massachusetts as soon as he dropped his niece off. He also told the victim she was a "pretty girl" and a "very attractive girl" and had asked her to return to Massachusetts with him. She declined the invitation. After leaving his niece at her house, the defendant drove the victim the short distance to her home. He parked and asked her for directions to highway, interstate 95. The victim gave the requested directions, but the defendant said that he wanted her to go with him to show him the entrance. He told her that once he had located the highway he would turn around and bring her back home. The victim informed the defendant that she did not have time because she had to get ready to go to a funeral. The defendant insisted, however, that she accompany him, and when she opened the door to exit the truck the defendant accelerated and the door flew shut. At this point, the victim acquiesced to the defendant's request and remained in the truck while she directed the defendant to interstate 95. During the ride the defendant told the victim he would turn around and bring her home when they reached the City Point Yacht Club. The defendant, however, continued driving when he reached the entrance to interstate 95 and then drove onto the highway. Once on the highway, the victim repeatedly asked the defendant to take her home, but he ignored her, and told her to "shut up" and continued driving. During the ride the defendant threatened her with a gun which she described as silver with a black piece on the handle. He also showed her pornographic magazines. Eventually, the defendant brought the victim to a dirt road in a wooded area off East Johnson Road in Cheshire. Once there, he ordered her to take off her clothes. When she refused he struck her, held a knife to her throat and cut and tore her clothing. In the face of the defendant's threats, the victim removed most of her clothing and the defendant sexually abused her. He then choked her until she was unconscious and left her partially clothed in the wooded area. When the victim regained consciousness, she made her way to East Johnson Road where a passing motorist picked her up and gave her a ride back to her parents in West Haven.
The convictions of kidnapping in the first degree, sexual assault in the third degree and assault in the third degree were CT Page 3085 affirmed as was the sentence of consecutive terms of twenty-eight and one-half years to life imprisonment. The procedural aspects of this case, in this court's opinion, were a substantial factor in the results. This case will be discussed later.
DECISION ON KIDNAPPING EVIDENCE IN PROSECUTOR'S CASE-IN-CHIEF
After considering each of the cases set forth and the principles of law set forth in this decision, the court enters the following findings as to each of the three distinct incidents discussed.
FIRST: Initial entry into the motor vehicle. There is no evidence that the initial entry into the vehicle was anything other than consensual. The complainant had unsuccessfully sought a ride home from a number of participants at the party. After she was told by her friends that it was okay, she reluctantly accepted a ride from the defendant. She had met him only a few minutes before and had engaged in virtually no conversation with him other than that concerning the ride. There is no evidence of use of force, threat of use of force or deception. No reasonable jury could find any force, threat of force or deception as to the initial entry into the motor vehicle. The jury would have to speculate and guess in order to reach a conclusion that the defendant intended to deceive the complainant at that point into entering the motor vehicle for the purpose of sex. Such a conclusion has no basis in the evidence. This court will not permit the initial entry into the motor vehicle to be considered by the jury as evidence of abduction to support kidnapping in the first degree.
SECOND: Movement of the complainant from the front passenger seat to the rear of the Jeep Wagoneer. The State's claim that the sexual assault commenced immediately upon the stopping of the vehicle by the defendant at the cul-de-sac on Leeuwarden Lane. According to the complainant, the defendant immediately stopped the car, moved to the passenger seat, lay on her and commenced to touch her in a sexual manner. The complainant testified that the sexual assault was concluded in the rear of the vehicle. According to the evidence, the sexual assault was continuous from the first contact between the defendant and the complainant in the front seat of the vehicle to the conclusion of the vaginal sexual intercourse that occurred in the rear of the vehicle. At all times the defendant was in bodily contact with the complainant. CT Page 3086
The distance from the front passenger's seat to the rear area was less than a body length. The complainant testified as to the use of force and threats of use of force which occurred throughout the entire sexual assault. There is evidence of movement of the complainant by the defendant. The evidence shows that this movement of the complainant occurred within and as part of the continuing sexual assault.
Therefore, this court concludes the movement was part and parcel of the sexual assault. The movement from the front seat to the rear of the vehicle was minuscule in comparison to the recited kidnapping cases. The court believes a kidnapping conviction "would result in an absurd and unconscionable result" especially if the jury returned a verdict of not guilty on sexual assault and guilty on kidnapping. State v. Troupe, supra 315. This court believes, if the evidence was limited to the initial entry into the motor vehicle and the sexual assault in the motor vehicle, the motion for judgment of acquittal should be granted.
THIRD: The driving of the motor vehicle to a small cul-de-sac road just beyond the complainant's house. The State has alleged that there are two aspects of kidnapping that have been met by this evidence. The first is the use of force or the threat of the use of force in the vehicle prior to the cul-de-sac stop, and the second is deception as shown by the defendant's actions during the motor vehicle trip.
There is no evidence indicating that there was force or the threat of the use of force during the motor vehicle trip. The defendant stopped at the stop sign where he attempted on two occasions to move over to the passenger seat and kiss her. He was rebuffed by the complainant. The complainant chose voluntarily to remain in the car. She did not attempt to leave the motor vehicle. She chose to remain in the car even though it was stopped and the defendant was not on her. This was not a restraint a restriction of movement. This court does not believe that the attempted kissing movement is sufficient evidence for the jury to conclude that there was either the use of force or the threat of force during the automobile trip prior to stopping at Leeuwarden Lane. Therefore, the court would grant the motion for judgment of acquittal if that was the only evidence during the trip.
The second issue relates to "deception." This court has CT Page 3087 already found that the jury can only speculate as to the defendant's intention in permitting the complainant to initially enter the vehicle at Dan Anderson's house. There is no evidence that the defendant was engaged in "deception" at the initial entry into the vehicle, i.e he obtained the complainant's consent to initially enter the motor vehicle by a false promise, thus negating any consent by the complainant.
There is other evidence during the fifteen-minute trip that may be pertinent to a jury's deliberations. Does this evidence indicate whether or not the defendant at some time during the trip formed an intent to engage in sexual intercourse and, therefore, deceived the complainant during that trip into thinking that she was receiving a voluntary ride when in fact it was the intention of the defendant to ultimately have sexual intercourse? The evidence is as follows:
1. The defendant stopped the motor vehicle and placed the transmission in "park" in the middle of a public highway at a stop sign a mile away from her house.
2. While in "park" he attempted to kiss her and put his body weight on her. He was rebuffed by the complainant.
3. After being rebuffed, he again attempted to kiss her by putting his body weight on her. He was again rebuffed by the complainant.
4. He continued driving and just before he got to her house he asked the complainant to smoke marijuana, inferring that the two of them could be alone together.
5. He had been notified by the complainant as to the location of her house. He lived in the immediate neighborhood. The complainant told him the house was here. The defendant drove by the house without attempting to stop.
6. He then told the complainant he would turn around and take her home. She said, "O.K."
7. He did not turn in and back around into Leeuwarden Lane but actually turned into Leeuwarden Lane.
8. Although he could have turned around into Leeuwarden Lane, backed around onto Leeuwarden Road and come back out onto CT Page 3088 Leeuwarden Road, he drove down a couple hundred of feet down Leeuwarden Lane and turned around at a cul-de-sac. He stopped halfway around the Leeuwarden Lane circle even though he had promised the victim a few seconds before that he would merely turn around and take her home.
9. Upon stopping at the circle, the defendant turned off the engine and immediately came over to the passenger side and commenced the sexual assault.
The question to be decided in this motion for Judgment of Acquittal is whether "deception" under these circumstances is a question for the jury to decide. It is that issue, and that issue alone, which the court will now discuss.
The State argues that the restraint as defined by C.G.S Section 53a-91 and used in this case during the automobile ride was accomplished by an act of "deception": The complainant's "consent" was obtained by defendant's deception. "Deception" is not defined in our statutes. There are only three statutory definitions regarding kidnapping: "restrain," "abduct" and "relative." C.G.S. Section 53a-91. Deception is not within that statutory section.
"Deception" is also found in the hindering prosecution statute, C.G.S. Section 53a-165, again without definition. Deception without any definition, is contained in the tampering with private communications in violation of C.G.S. Section 53a-188. Furthermore, deception is also contained in larceny by way of theft of services. C.G.S. 53a-119(7) (by means of any false or fraudulent representation, fraudulent concealment, false pretense or personation, trick, artifice or device). Deception is also found as a element of murder. C.G.S. Section 53a-54a. None of these statutes contain any definition of deception.
The sex offense part of the Connecticut General Statutes has its own definition section. PART IV. SEX OFFENSES: C.G.S. Sections 53a-65 through 53a-89. "Therapeutic deception . . . means a representation by a psychotherapist that sexual contact by or sexual intercourse with the psychotherapist is consistent with or "part of the patient's treatment." C.G.S. 53a-65(12). There are no further definitions of deception. There is no case that further defines therapeutic deception in a sexual assault environment. It appears from this definition that an affirmative representation must be made for therapeutic deception to be CT Page 3089 established.
There is no appellate court decision in Connecticut that defines "deception" in a criminal context. The general rationale for this lack of definition seems to be "there is no prescribed set of circumstances which show the commission of the crime of larceny by trick." State v. Vars, 154 Conn. 255, 266 (1966). "Where alleged fraud is under investigation, considerable latitude is hallowed in the admission of evidence and the scope of inquiry may be broad." State v. Parker, 112 Conn. 39, 54
(1930). "Since from its nature, intent to defraud is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency . . . to establish fraudulent intent on one hand or on the other hand to show the bona fides of the accused." State v. Parker, supra 54. Parker involved embezzlement. "Embezzlement was not a crime at common law. It is a purely statutory offense, and it is punishable, as such, only and as to the extent that the legislature has by statute provided." State v. Parker, supra 45. Although proof of fraud admits of liberality, as a penal statute its statutory definition must be strictly construed. "Being a penal statute it must be strictly construed in that it cannot be enlarged by construction to cover a case not within its literal terms or for the purpose of more effectively suppressing the mischief at which it is directed." State v. Levy, 103 Conn. 138, 141 (1925).
There being no definition in the criminal statutes of deception and no criminal case that clearly defines deception, this court turns to civil definitions.
"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end desires." Jackson v. Jackson,2 Conn. App. 179, 193 (1984). Alexander v. Church, 53 Conn. 561, 562
(1886). "The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Maturo v.Gerard, 196 Conn. 584, 587 (1985); Billington v. Billington,220 Conn. 212, 217 (1991).
Connecticut also recognized that civil fraud must be proven by a standard more exacting than a preponderance of evidence. CT Page 3090 Fraud must be proven by clear and satisfactory evidence or clear, precise and unequivocal evidence. J. Frederick Scholes Agency v.Mitchell, 191 Conn. 353, 358 (1983). As a civil remedy fraud is indeed difficult to prove and requires strong proof. It has been said that fraud is easy to allege and hard to prove. Miller v.Appleby, 185 Conn. 51, 55 (1981).
In a criminal context claimed deceptions by police departments in obtaining the voluntary statement of a defendant are reported. State v. Jones, 205 Conn. 638, 653 (1987). "This decision to relinquish this protection was, on this record, voluntary; i.e., it was the product of a free and deliberate choice rather than intimidation, coercion or deception." State v.Jones, supra 653. Acts of deception by the police, a deliberate misstatement that the defendant's wife would be interviewed and the encouragement of the defendant to come to the police station "to aid in an investigation" were considered in State v. Kathan,1993 Ct. Sup. 2339, 2347, March 5, 1993. The common thread in these Miranda deception cases is the affirmative false statements allegedly made by the police to obtain the defendant's voluntary consent. State v. Reynolds, 1994 Ct. Sup. 8690, 8697, August 30, 1994; State v. Stoddard, 206 Conn. 157, 179 (1988).
The only reported criminal case on "deception" in Connecticut is found in State v. Smith, supra 147. The facts of State v.Smith have been recited in this opinion at the end of the prior section. There were substantial procedural problems in State v.Smith. The information charged the defendant with kidnapping in West Haven. Clearly kidnapping occurred outside of West Haven on I-95 and during the sexual assault in the woods in Cheshire, but the information did not charge the defendant with kidnapping at those locations. The defendant's act of threatening the victim with a gun did not occur in West Haven.
In addition, the defendant was convicted of a class A Misdemeanor Assault and a class D Felony Sexual Assault, limiting the maximum imprisonment to six years. The Supreme Court held in the kidnapping thereby permitting the defendant to serve his twenty-eight plus year sentence. In order to justify the sentence the trial court and the Supreme Court had to determine whether or not kidnapping occurred within the city of West Haven.
The court correctly charged the jury that the restraint "which is the basis of the crime of kidnapping must have been imposed on the victim without the victim's consent and that CT Page 3091 acquiescence secured by fraud or deception is not deemed consent." State v. Smith, supra 152. The decision further stated:
 The fact that the victim did not affirmatively and vocally protest her continued presence in the defendant's truck and request him to return her to her home until the truck entered upon interstate 95 in New Haven has no effect on the validity of the jury's verdict in this case. The jury could reasonably have found proved beyond a reasonable doubt that, while parked in front of her home in West Haven, the defendant requested the victim to accompany him to show him the entrance to interstate 95 and he promised to return her to her home when that was accomplished. The jury could also have found proof beyond a reasonable doubt that the defendant's request and promise were a ruse employed to lure the victim into his control and with that she was therefore deceived into remaining with him . . . The fact that the victim did not know that she was being restrained is of no consequence . . . The word deception as used in General Statutes § 53a-91(1)(a) implies that the victim did not know she was being restrained . . . It is the intent of the accused which the state has to prove, not that of the victim. The jury therefore, could have found that the victim was restrained and abducted in West Haven. There was no variance between the indictment and the proof adduced at trial.
State v. Smith, supra 152-53.
Because of the kidnapping information alleging West Haven,State v. Smith was a procedural nightmare for both the trial court and the Supreme Court. Despite the procedural problems the Supreme Court took it upon itself to discuss the first "deceptive" kidnapping case in Connecticut. As its foundation it chose four out-of-state cases. Each case involved affirmative statements as part of defendant's deception, evidence of preplanning by the defendant at the commencement of the trip and no change of purpose in the midst of the trip, i.e., split trip.
State v. Smith based its decision on the following four cases. U.S. v. Hoog, 504 F.2d 45, 51 (8th Cir. 1974) is a Missouri federal case in which the defendant was convicted of CT Page 3092 kidnapping and aiding and abetting kidnapping. There was no error on appeal. In three separate counts involving three separate teenage girls, each of the victims accepted a ride with the understanding that the defendant would give her a ride home. Each of the rides was interrupted by a radio receiver message in the defendant's truck. The victim was then removed by the defendant to a deserted building and raped by the defendant and a co-defendant who was located in the building. It appeared in Hoog that the side trip had been preplanned by the defendant and the co-defendant in each of these three separate incidents. It further appears that there was an affirmative deceptive promise made by the defendant and no split trip. The intention to deceive appears at the beginning of each trip.
State v. Colbert, 221 Kan. 203, 557 P. 2nd 1235 (1976) involved convictions of robbery, conspiracy and kidnapping which were affirmed on appeal. The co-defendant prevailed on the victim after asking him several times to give the defendant a ride home. The victim then agreed to take the defendant home. On the way the victim stopped at the co-defendant's "disabled truck" which had a rag over the license plate. The victim was robbed by both defendants. It appears from this evidence that the trip had been preplanned by both defendants. There were affirmative deceptive representations and promises made. There was no split trip. The intention to deceive appears at the beginning of the trip.
State v. Alston, 294 N.C. 577, 588-89, 243 S.E.2d 354 (1978). The defendant was convicted of kidnapping, armed robbery and assault with a deadly weapon with intent to kill. The convictions were affirmed on appeal. The victim was walking. The defendant, who was not known to the victim, stopped and asked the victim to get into the car. During the ride the defendant produced a pistol. He robbed and shot the victim in the woods. It appears that the robbery was preplanned by the defendant from the time he picked up the victim. There were affirmative deceptive representations by the defendant that he would give the victim a ride home. There was no split trip. The intention to rob appears at the beginning of the trip.
People v. Valero, 120 Misc.2d 539, 542. 466 N.Y.S.2d 600
(1983) involved two counts of kidnapping affirmed on appeal. The defendant met the female victim outside a convenience store and offered her $10 to babysit his infant daughter. The victim entered the car and was transported by the defendant to another location where she was held against her will for a week. The CT Page 3093 defendant intended to abuse her sexually and to exploit her for prostitution. There was an affirmative deceptive statement by the defendant. There was no split trip. The intention to deceive appears at the beginning of the trip.
State v. Smith involved affirmative, verbal promises made by the defendant to the victim after the initial trip had ended as promised at her home. Once they had located the highway he would turn around and bring her back home. The victim acquiesced in the defendant's request that she accompany him to the interstate highway 95 exit. The affirmative statement was that during the ride the defendant said he would turn around and bring her home when they reached the City Point Yacht Club. He continued to drive and during that drive acts of violence occurred: to wit, he ignored her repeated requests to take her home, told her to shut up, continued to drive, threatened her with a gun, showed her pornographic magazines and drove her to a dirt road in Cheshire where the sexual assault took place. Therefore, it appears that there were affirmative statements made in State v. Smith that amounted to deception. There is no reported case in the state of Connecticut that permits "deception" in a criminal context to be accomplished by an act of omission and/or silence.
Although the nine numbered incidents set forth in the previous section of this decision regarding events that occurred during the ride are argued by the State to show defendant's deception, the clear fact remains that the initial entry into the motor vehicle was voluntary. There is no evidence of any deception that occurred in the mind of the defendant at the time of the entry into the motor vehicle.
This court has ruled that the jury cannot consider the first two of the three factual scenarios on the charge of kidnapping: the initial entry into the motor vehicle and the movement from the passenger seat to the rear cargo area. This court further believes, that removing from the jury in its instructions, those two factual scenarios would inevitably cause jury confusion.
If both offenses of kidnapping and sexual assault were submitted to the jury, the jury could conceivably find that the actual sexual intercourse was consensual but that the defendant deceived the complainant during the ride. The jury could find that the complainant only thought about and consented to the defendant's sexual advances at the cul-de-sac. The jury under that scenario could acquit on the sexual assault and convict on CT Page 3094 kidnapping: an absurd and unconscionable result. State v.Morales, 45 Conn. App. 116, 136 (1997): Mortensen v. UnitedStates, 322 U.S. 369, 375 (1944); Bell v. United States,349 U.S. 81, 83-84 (1955): Whalen v. United States, 445 U.S. 684, 704
(1980); Hansen v. Hatt, 291 U.S. 559, 563 (1934) Cleveland v.United States, 329 U.S. 14 (1946).
Therefore, this court finds that based on the lack of statutory definition of "deception," case law that requires an affirmative statement to be made early on in the asportation, the voluntary nature of the initial entry into the motor vehicle, the minuscule movement from the passenger seat to the rear of the vehicle, double jeopardy considerations, strict construction of a penal statute and the lack of support of the State's position inState v. Smith, the evidence would not reasonably permit a finding of guilty of kidnapping in the first degree. All lesser included offenses of kidnapping rely on the definition of "restrain." Therefore this decision applies to all lesser included offenses of kidnapping.
This court will grant the Defendant's May 22, 1997 Motion for Judgment of Acquittal as to kidnapping in the first degree in violation of C.G.S. Section 53a-90(1)(a).
This court denies the Defendant's May 22, 1997 Motion for Judgment of Acquittal as to sexual assault in the first degree.
Tierney, J.